# CHARLESTOWN.

## CAMDEN *v.* HAYMOND.

### November 2, 1876.

1876.
August Term. H. brought a chancery suit to enforce a vendor's lien against the lands of A. and to attach his property, an l that of his surety C. A. and C. being alleged to be non-residents of the State. The court ascertained their indebtedness, when it rendered its decree, to be $3,-504.52. and that they would be further indebted at a future period, $10,307 more. In ascertaining this indebtedness, the court charged them with compound interest on the purchase money of the land; did not allow a credit of $750 for which the land had been rented out under a previous order of the court, and before decreeing a sale of the land which was subject to the vendor's lien, d.d not collect and apply certain effects in the hands of a third party due to A., and which was attached. The court decreed that the plaintiff recover of A. and C., said sum of $3,507 52 with interest, and unless the sum was paid in thirty days, special commissioners, appointed by the court, should sell A's land which was subject to this ve ndors lien. In the same decree, it was further adjudged, that the $10,307, to become due, was also a vendor's lien on this land, and that it was likewise a lien on the property of A. and C. which had been levied on under the attachment; and leave was given the plaintiff, thereafter, to apply for a decree to sell the lands of C. attached, and also to apply for a decree to entorce the payment of the $10,307. Under this decree a sale was made which was confirmed, and more than five years afterwards, C. filed his answer and afterwards a petition to rehear these decrees. The court refused to rehear these decrees, and ordered the sale of C's lands, attached to pay the balance due plaintiff, ascertained, by assuming the amount named in the former decree of sale, as showing the real amount then due. C. appeals from this decree and those preceeding on which it was based.—HELD:

1. The first decree of sale, and the decree confirming the sale were both interlocutory decrees, and not final either as to A. or C.

2. C. being a surety, bound to pay the whole of the debt not made out of the principal A, has such an interest in the provisions of this decree for the sale of A's lands, as entitles him to have it reviewed on his appeal.

3. These interlocutory decrees may be reviewed upon C's appeal, promptly taken, from the decree for the sale of the land though more than five years had elapsed since the rendition of these interlocutory decrees.

4. Though there be error, in the amount decreed to be due from A. and C., for the non-payment of which A's land was ordered to be sold, still this court would not, after the confirmation of the sale, set aside the sale, or the decree ordering the sale, even though the sale was made immediately after the rendition of the decree of sale; but it would simply correct the error, by allowing to A. and C. credit for the amount of the error on the balance due from them.

2. No sale of real estate which has been attached, can be ordered until all the personal property attached has been sold.

3. If a court make an order to sell real estate when it had no jurisdiction to make such order, the owner of such real estate not having been summoned, or otherwise brought before the court, the Appellate Court will reverse such decree of sale *in toto*, as also the order confirming a sale made under such decree.

4. Such a decree, and such order confirming said sale, should be treated as nullities even in a collateral controversy.

5. Taxes on lands accruing while the land is being rented out under an order of the court, should be paid out of the rent.

6. If a decree recites that the cause came on to be heard on bill, answer and general replication thereto, and an appeal is taken from such decree, and depositions which had been taken to sustain the answer are copied in the record these depositions will not be read or considered in the Appellate Court.

Appeal from a decree of the circuit court of Harrison county, rendered on the twenty-fourth day of January, 1874, in a cause therein pending, in which Luther Haymond was plaintiff, and Gideon D. Camden, and R. Snowden Andrews, were defendants.

Appeal granted on the petition of said Camden, appellant. The facts are set forth in the opinion of the Court.

Hon. C. S. Lewis, Judge of said circuit court, presided at the hearing below.

1876.
August Term.

Camden
v.
Haymond.

*Caleb Boggess, Charles Marshall* and *Bradley T. John-son,* for appellant.

*Edwin Maxwell* and *N. Goff, Jr.,* for appellee.

·GREEN, JUDGE.

Luther Haymond, trustee, filed his bill in the circuit court of Harrison county, at February rules, 1863, against Richard Snowden Andrews, and Gideon D. Camden, as non-residents, and William E. Lovett and Lott Bowen, as home defendants. The bill alleges that Luther Haymond, trustee, on July 15, 1859, sold to Richard Snowden Andrews, then and still a non-resident of the S·ate, a tract of eight hundred and nineteen acres of lan.l in Harrison county, at the price of $15,151.50, of which $1,732.76, was to be paid in ·cash, $1,099.70 on April 3, 1860, three several sums of $670.70, on the third days of April, 1861, .862 and 1863, respectively, and the balance $10,30ꝰ, on April 3, .864,; that all these deferred payments bare interest, which interest was to be paid annually; that Andrews paid the cash payment, and executed his notes for all the deferred payments, with Camden as his surety; that, thereupon, a deed for the land was executed to Andrews, reserving the vendors lien for the unpaid purchase money, and a copy of the deed is filed with the bill. The bill further alleges that Andrews paid the first instalment, and the interest on all of them to April 3, $1416., but had wholly failed to pay any further amount. The bill claims that this unpaid purchase money was a lien on the land, and that it should be sold to pay the same. It further stated that Andrews and Camden were both by the laws of the land, non-residents of the State; that they had estates and effects in this State liable to attachment; that Camden owns a house and lot in Clarksburg, and a tract of land near Clarksburg, and perhaps other estate; and that Andrews, besides this eight hundred and nineteen acres of land, had some personal property or effects in

the hands of the home defendants, Lovett and Bowen. The bill further alleged that Andrews had not been in Harrison county for eighteen months, that he was exercising no care over this eight hundred and nineteen acres of land, and it was going to waste, and that the plaintiff's debt was thereby endangered. The prayer of the bill was that this eight hundred and nineteen acres of land be rented out, and the rents applied to the plaintiff's debts, and that this land be held liable to the payment thereof; that an attachment should issue against Andrews and Camden to be levied on their estates; that Lovett and Bowen be made defendants, and disclose what money and effects of the absent defendants, they have in their hands; that the eight hundred and nineteen acre tract, and the other estate of Camden and Andrews, be sold, and the plaintiff's debt paid, and for general relief.

The bill was sworn to, and an order in vacation was thereupon made, directing a special commissioner to rent out Andrew's land. An order of publication against Andrews and Camden, was duly made and executed, in which it is recited, that it appeared, by affidavit, that they were non-residents of this State; the affidavit referred to is not, however, copied in the record.

Lovett filed his answer, stating that he had nothing in his hands, except a lease of a part of Andrew's land to Bowen, on which he owed $300, but a portion of which was subject to a previous attachment in the county court of Harrison, issued by Henderson and Paydon, against Andrews and others. The commissioner to rent, reported that he had rented Andrew's farm for $750 for one year to April 1, 1864, payable January 1, 1864. This report was confirmed, and he was ordered to collect the rent when it should become due. On December 12, 1863, after reciting that order of publication had been returned duly executed against the absent defendants, Andrews and Camden, and decree nisi as to them, and that process had been duly executed on Bowen, who failing to answer, the bill was taken for confessed as to him,

and that the cause was heard on the answer of defendant, Lovett, and general replication thereto, and on the bill and exhibits, and that the court had heard such proof as was offered against the non-resident defendants, the court decreed that the plaintiff recover of the defendants, Andrews and Camden, $3,504.52 with interest on certain parts thereof, from certain dates, and the costs of the suit. The court, in the said decree, further recited that it appeared, not only that said sum, but also the single bill of Andrews and Camden for $1,307, payable April 3, 1864, were a part of the purchase money of the eight hundred and nineteen acre tract of land, and that a lien thereon was expressly reserved to secure their payment, and, therefore, declared them to be a lien on said land, and declared that unless Andrews and Camden should, within thirty days, pay the plaintiff said sum of $3,504.52, with the interest aforesaid, that commissioners, thereby appointed, should sell, in a specified manner, said tract of eight hundred and nineteen acres. The court, in said decree, further recites, that the attachments were issued on sufficient cause, and were levied on the property mentioned in the returns on the attachments, and declared that they were liens on said property, but the plaintiff not asking then for a decree for the sale of Camden's real property, leave was given him thereafter to apply for such a decree, "as well as for a decree to enforce the payment of said single bill payable on April 4, 1864, for $10,307." And the court further ordered the rents, when collected, to be applied first to the payments of costs of all sorts incurred in the suit, and the residue to be paid to the plaintiff on interest due to him.

The commissioners of sale reported that on March 12, 1864, they sold this tract of land of eight hundred and nineteen acres, at public auction, in the manner prescribed by the decree, and that James Lynch was the purchaser at the price of $12,110, and that he had complied with the terms of sale.

On March 26, 1864, the court confirmed the sale, directed the collection of the deferred payments when they became due, and after payment of certain costs, directed the special commissioners to pay to the plaintiff the amount heretofore decreed to him, and the residue as the court might afterwards direct. The commissioners were required to give a bond, in the penalty of $2,000, conditioned, as the law required, before collecting the purchase money.

On June 14, 1864, the court ordered the taxes on said land for 1863, amounting to $44.23, to be paid by the commissioners out of the proceeds of the sale, and on March 18, 1867, the court, reciting that Bowen had paid plaintiffs counsel $375.60, the amount of his indebtedness, it was ordered to be applied, first to the discharge of the decree in favor of Henderson and Paydon against Andrews and others, which suit was then dismissed, and the residue to L. Haymond, on his decree, and the suit was then dismissed as to Bowen.

On June 4, 1870, Camden, by leave of the court, filed his answer, in which he states, that shortly after April 1, 1861, he was in the town of Beverly, Virginia, attending to business, and, while there, hostilities began in that region between the United States and the Confederate States. That, on August 16, 1861, the President of the United States, pursuant to an act of Congress of July 13, 1861, issued a proclamation, declaring certain States, and parts of States, to be in insurrection against the United States, and prohibiting all intercourse between the inhabitants of the United States and these insurrectionary districts; that the part of the State of Virginia of which he (Camden), was then an inhabitant was a portion of the territory thus declared to be in insurrection, and that therefore no interest could be properly charged against him, in favor of the plaintiff, during the continuance of this state of things, which lasted till the war closed, and that it was still more improper to have charged him compound interest, as had been

1876.
August Term.

Camden
v.
Haymond.

done. He also insisted, in this answer, that, under these circumstances, the court could acquire no jurisdiction over him by order of publication, and he further said that he was informed and believed, that his co-defendant, Andrews, was during the whole war, an inhabitant of such insurrectory portion of Virginia, and that, for these reasons, the decree of December 12, 1863, should be set aside. This answer is sworn to by Camden, and on January 24, 1874, he tendered a formal petition to rehear this decree, for the reasons set out in his answer, and because no credit was given him for the rents, in ascertaining the amount due, and which was to be paid, if the sale was to be avoided. The court refused to permit this petition to be filed, and also overruled a motion of said Camden to set aside this decree. The plaintiff released so much of this decree, as allowed him compound interest, and in the same decree in which the court refused to permit the filing of the petition, overruled the motion to set aside the decree, and corrected the decree by the plaintiff's releasing the compound interest. It was recited that the cause was heard "on the decrees heretofore rendered and bill and exhibits therewith filed, and the answer of the defendant, Camden, and general replication thereto." And also that it appeared, after this release by the plaintiff, and after crediting on the indebtedness of the said Andrews and Camden to the plaintiff, the amount for which the farm rented, and also the amount for which it sold less the costs of this suit, and the expenses of renting and selling, $2,896, with interest thereon from January 23, 1874, and the court thereupon decreed that the sheriff of the county should sell at public auction a sufficiency of Camden's real estate, attached on the terms, and in the manner prescribed in the decree, and he should make report to the court.

Certain depositions were taken by Camden, and filed in the cause intended to sustain his answer, but they are not referred to in the decree as any portion of the papers

on which the cause was heard. From this and the previous decrees, the defendant, Camden, appealed promptly.

The appellee, by his counsel, insists, that it is now too late for the appellant to appeal from the decree of December 12, 1863, it being, as he claims, a final decree.

Whether this decree can now be reviewed by this Court, depends upon whether it was final or interlocutory. Judge Baldwin in *Cocke's, Admr. v. Gilpin*, 1 Rob. R. page 27 and 28, says, " that the proper criterion for determining whether a decree is interlocutory or final, is where the further action of the court.*in* the cause is necessary to give, completely, the relief contemplated by the court, then the decree upon which the question arises is to be regarded, not as final, but interlocutory. I say the further action of the court *in* the cause to distinguish it from that action of the court, which is common to both final and interlocutory decrees, to-wit, those measures which are necessary for the execution of a decree that has been pronounced, and which are properly to be regarded as adopted not in, but beyond, the cause, and as founded on the decree itself, or mandate of the court, without respect to the relief to which the party was previously entitled upon the merits of his case." This criterion seems to me to be the proper one ; and applying it to the decrees of December 12, 1863, and of March 26, 1864, neither of them were final, either as to Andrews or Camden. By the bill he claims, to be due from them, and to become due afterwards from them, $15,151.50, but he recovers only by these decrees, $3,504.52 with interest and costs. A large portion of the debt claimed by the bill, that is $10,307, was due in a few months after the decree was rendered, and the court rendered no decree therefor, but it is obvious that the court contemplated rendering a decree therefor against the defendants Andrews and Camden, at a future period, when it had become due. The decree of December 12, 1863, on its face, shows that the court contemplated this further

action. The court, in this decree, rendered a judgment against Andrews and Camden, personally, for $3,504.52, which sum included an amount which fell due after the bill was filed. The inference from this alone would be that the court intended when the last installment of $10,367, fell due to render a personal decree against them for that also. But this purpose is not left to inference, for leave is expressly given the plaintiff " to, thereafter, apply to the court for a decree to enforce the payment of the $10,307." And by this it is obvious was meant a personal decree against the defendants, Andrews and Camden, and not simply a decree to sell Camden's lands and property attached; for in addition to the above, leave is expressly given the plaintiff to, thereafter, obtain an order for such sale of the attached property. This personal decree, contemplated to be made thereafter was obviously, further action *in* the cause, and not a measure necessary for the execution of the decree already pronounced. The only decree already pronounced in reference to this $10,307, was that a lien on the property of Andrews and Camden attached, and on the 819 acre tract, and the leave reserved to apply to the court for a decree to sell the real estate of Camden attached, was a measure necessary for the execution of this decree already pronounced. But the rendition of a personal decree against them, at a future term, was not a measure necessary to enforce this specification; but like the personal decree for the $3,504.52 was a decree *in* the cause based upon the bill. This decree, being then interlocutory both as to Andrews and Camden, can it be properly reviewed on this appeal of Camden's? He had an unquestionable right to appeal from the decree of January 24, ordering the sale of his real estate, to pay the balance $2,896, stated in that decree to be due from him and Andrews; but this balance depends upon all the preceding interlocutory decrees including the decree of December 12, 1863. This, and the succeeding interlocutory decrees, form the basis of the decree of Jan-

uary 24, 1874. The correctness of the amount $2,896 for which Camden's real estate was ordered to be sold, depends upon the correctness of all the preceding decrees, and it cannot be reviewed without reviewing them. Camden is liable to make satisfaction for the whole of the plaintiff's debts. He is therefore prejudiced by any error in any of the preceding interlocutory decrees, whereby this balance is increased. Whether it be a failure to allow a proper credit, or an overcharge of the amount due the plaintiff, or an improper sacrifice at the sale of his principal's land; see Baldwin's opinion in *Cocke's, Admr. v. Gilpin*, 1 Rob., page 42.

The errors alleged in the decree of December 12, 1863, are:

*First,* The computing of interest upon interest in ascertaining the balance due from Andrews;

*Secondly,* In not crediting him with the proceeds of the rent of the farm on the lease made by a commissioner of the court;

*Thirdly,* in not collecting and applying the money due from Bowen before such decree was rendered;

*Fourthly,* in charging Andrews and Camden with interest during the war, they being, as alleged, inhabitants then of a country at war with the country of which the plaintiff was an inhabitant;

And, *lastly,* that the court had no right in 1863 to render any decree against Andrews and Camden, or against their real estate, because they were not before the court, the order of publication against them being a mere idle form, as neither of them could then have come to Harrison county to defend the suit, or could have known of the pendency of the suit, all intercourse between them and said county of Harrison, being then illegal, they being then residents of a section of country at war with the residents of Harrison county.

If the three first of these be errors, they are of such a character, that this Court, if they had not been corrected, would have done no more then to direct that the credits

claimed should have been allowed, in ascertaining the amount for which the land of Camden attached, should be sold. For errors of this description, if they existed, this Court would not, in reversing the decree of December 12, 1863, set aside a sale made under that decree which had been subsequently confirmed *Gray v. Brignardello*, 1 Wall., 6∠7 ; *Voorhees v. Bank of United States*, 10 Pic., 449 ; *Bennett v. Harrel*, 2 Sch. and Lef., 566. The circuit court, having corrected these three alleged errors, in the only manner in which this Court would have corrected them, had they been errors, there is nothing left of them of which the appellant can complain. The circuit court, in ascertaining the amount for which Camden's land was to be sold, allowed these three credits in the decree of January 24, 1874; and this is all this Court could have done.

The last two errors in the decree of December 12, 1863, alleged have no foundation in fact, so far as the record shows. They are both based on the supposition, that there was proof in the cause establishing that the plaintiff, and the defendants, Andrews and Camden, resided, when this suit was brought, in hostile counties. But there is no such proof in this cause, which this court can consider. It is true, this is alleged in Camden's answer, but this answer was replied to generally, and there is no proof which this Court ·can consider, of the truth of these allegations. There are appended to the record several depositions, designed to sustain these allegations in the answer of Camden ; but the recitals in ·the decree of January 24, 1874, of what the cause was heard upon, shows that it was not heard on these depositions. Why it was not heard on these depositions also does not appear, but, in the absence of any objection to their exclusion being made in the circuit court, this Court cannot regard their exclusion as any error. And not having been read in the court below, they cannot be read or considered in this Court. *Shumate v. Dunbar*, 6 Munf. 431. If the evidence, which this Court could consider, had shown that

1876.
August Term.
———
·Camden
v.
·Haymond.

the circuit court of Harrison had no jurisdiction to render any decree against Andrews and Camden, because they had not properly been brought within the jurisdiction of that court, by the order of publication, this would have been a fatal error in the decree of December 12, 1863, and all the subsequent interlocutory orders. It would have rendered those decrees entirely void, and must have been followed by this court setting aside the sale of the land of Andrews, made under a void decree. But that portion of the record which this Court can consider, shows that the circuit court of Harrison had jurisdiction over both Andrews and Camden. It simply shows that they were non-residents of the State, (not necessarily residents of a hostile country.) They had, each of them, real estate in Harrison county; and the circuit court of that county, by the order of publication, obtained jurisdiction of the subjectmatter of the suit, and of these non-resident parties, in the usual manner, and had a right to render a decree against them. It would be improper for me to express any opinion as to what effect the residence of the defendants in a hostile country, would have had on the question whether the circuit court of Harrison had jurisdiction to render such a decree in this cause. This record presents no such case. I conclude, therefore, that there is no error in the decree of December 12, 1863, for which it should now be reversed, and none in the decree of March 24, 1864, for which this court can now reverse it.

There is no error in the decree of June 4, 1864, directing $44.23, the taxes for the year 1863, to be paid out of the proceeds of the sale, of which appellant can complain. They were liens on the lands of Andrews, superior to the plaintiff's lien; these taxes accrued while the land was being rented out under an order of the court, and they should have been paid out of the rents of the land when collected under the order of the court; the defendants, therefore, were not injured by the order ·directing its payment out of the sale of the land, as the

amount, for which they got a credit when the rent was credited on the claim against them, was increased to the same extent.

The order made June 4, 1870, directing the payment of a debt due Henderson & Paydon on an attachment against Andrews and others out of the funds in Bowen's hands, is complained of by the appellant. It is insisted that this suit of Henderson & Paydon had been dismissed previously, and, therefore, no portion of the funds in this cause could have been properly applied to pay the claim of the plaintiffs in that cause. As I understand the record, this suit had not been previously dismissed, but was then pending in the circuit court; it had been brought in the county court of Harrison and on the abolition of that court, was transferred by law to the circuit court; and, being in the circuit court, it ordered that the plaintiffs, in that suit should be paid the whole of their claim out of the funds in Bowen's hands, and, by the same order, dismissed that cause as ended. We must assume that this order was correct.

Lovett, in his answer, states that the funds in Bowen's hands were liable first to this attachment of Henderson and Paydon. The circuit court had the records of both causes before it, and we must assume, properly, gave priority to the claim of Henderson and Paydon, as the contrary has not been made to appear, by bringing before the Appellate Court, a copy of the record in the cause of *Henderson & Paydon v. Andrews, &c.*

It is insisted that the circuit court erred in not treating Camden's answer as a petition to rehear, and in refusing to permit him to file his formal petition for a rehearing of the decree of December 12, 1863. This petition was offered January 24, 1874, and was rejected by the circuit court, because, in its view, it was presented too late. That court considered that the time, during which the war was pending, and the time, during which the suitors test oath was required to be taken, ought not to be added to the time in which the statute requires

such a petition for a re-hearing to be filed, though Camden made affidavit that he could not make truly the affidavit prescribed by the twenty-seventh section of chapter 106 of the Code of West Virginia. It is unnecessary for us to decide whether the circuit court erred in this matter, for we have reviewed the decrees,.which Camden sought to have reheard, and have found that there was no error in them of which he can now complain. If the circuit court did err in this, such error did not prejudice the appellant.

But it assigned as an error in the decree of January 24, 1874, that the court did not dispose of the personal estate of Camden, which had been attached before ordering his real estate attached to be sold. The twentieth section of chapter 106, of Code of West Virginia, expressly provides, that no real estate which has been attached shall be sold under an order of the court, until all other property and money levied on has been exhausted. In this cause, personal property of Camden had been attached and levied upon; this property was "a negro man, a piano forte, his household and kitchen furniture, and his law library." It is suggested that this property was never taken possession of by the sheriff, and never was under the control of the court. But the record shows the reverse. It was levied on,. and the court by its decree of December 12, 1863, expressly declared that the plaintiffs had a valid lien on this property for the satisfaction of their claim. The plaintiff's lien has never been released. And the personal property under the control of the court must be sold, before the real estate attached can be properly sold. We know that, as one of the results of the war, the negro man is no longer subject to sale, and is no longer under the control of the court. It may be, too, that a portion of the other personal property attached, or possibly the whole of it, may have been destroyed during the war, but this does not appear to be the case by the record,. now presented.

The decree of the circuit court of January 24, 1874, must therefore be reversed, and the cause remanded to that court with instructions, that if necessary, an inquiry be made as to what portion of the personal property of Camden levied on remains under the control of the court, and that before decreeing the sale of any land attached, such personal property, so remaining under the control of the court, shall be first sold.

To avoid misapprehension, we desire it understood that if it shall hereafter appear, that, in point of fact, the circuit court of Harrison had no jurisdiction of this cause, when it rendered its decree ordering a sale of the land of Andrews, and, therefore, no right to render such decree, that neither the decree of the court in this cause, nor anything in this opinion should be regarded as upholding the decree of December 6, 1863 ordering this sale, or the decree of March 26, 1864 confirming the same, as against Andrews. This Court, by no decree it could render, can preclude Andrews from showing, even in a collateral controversy, that this land was sold by the court when it had no jurisdiction to make such sale, and if this be so, that such sale is a nullity. All we mean to say is that this record does not show such want of jurisdiction on the part of the circuit court of Harrison.

The decree of the circuit court of Harrison of date January 24, 1874, must be reversed and the appellant recover of the appellee his costs about this appeal expended. And the cause must be remanded to the circuit court of Harrison, with instructions to proceed with the same upon the principles set forth in this opinion, and according to the rules of justice and equity.

Edmiston and Moore, Judges, concurred.

Haymond, President, did not sit in this cause.

DECREE REVERSED.