JOYNES, J.
I shall first dispose of the case of Littlejohn v. Ferguson & als.
There is nothing in the objection that the Circuit Court could not entertain Ferguson’s petition for re-hearing, while the appeal of the James River and Kanawha Company was depending. The statute (Code ch. 170, § 13) which authorizes an absent defendant who has not appeared, &c., to petition to have the case re-heard, makes no exception of cases in which an appeal has been taken. It is *true the appeal was really prosecuted for Ferguson’s benefit. But on the appeal advantage could be taken only of errors in the record as it stood at the time of the decree complained of, while Ferguson had the right, under the statute, to file his answer and introduce evidence so as to make, if he could, a different case. It is true, that after the appeal | there was no longer a case pending in the Circuit Court. But that was not for the reason that an appeal had been taken, but for the reason that the case had been ended in that court by a final decree. But the original papers remain in the Circuit Court after an appeal, and there is no difficulty in reinstating the case on the docket when a petition for re-hearing is filed.
The appeal, however, in such a case will not be dismissed upon the filing of the petition for re-hearing, as the decree complained of can only be altered or set aside on the re-hearing. Platt v. Howland, 10 Leigh 507. If on the re-hearing the decree, or so much of it as is the subject of appeal, is wholly set aside, a dismission of the appeal will, as a general rule, follow as a matter of course. But if. an appeal from •the decree on the re-hearing should be taken before the appeal from the original decree has been dismissed, the appellate court may refuse to dismiss the appeal, inasmuch as the decree on the re-hearing may perhaps be reversed on the appeal taken from it. In this instance, there has been no motion to dismiss the appeal from the original decree, so that both appeals are now before us for decision.
It was essential to the jurisdiction of the court upon the proceedings for a re-hearing that they should appear to have been duly instituted within the time prescribed by law. And as was held by this court in the case of a bill of review, it was incumbent on Ferguson to show this affirmatively, though no objection were made that the proceedings were too late. Shepherd v. Larue, 6 Munf. 529.
*It was suggested at the bar that the language of the statute requires that the proceedings shall be concluded, as well as commenced, within the time limited. But such a construction would be inconvenient and harsh in its results, would be inconsistent with what is required in analogous cases, and is not demanded by the language. The language is, that the absent defendant may, within the time limited, “petition to have the case re-heard, and may plead or answer, and have any injustice in the proceedings corrected. ’ ’ This language is satisfied when the absent defendant, within the time limited, “petitions to have the case re-heard.” But the question remains, and is important, in this case, whether it is enough that he should present his petition to the court within the time limited, or must he go further within the time limited, and obtain leave of the court to file his petition, upon notice to the adverse party?
It seems to me that the absent defendant petitions to have the case re-heard “within the terms and within the meaning of the statute” when he presents his petition to the court. And, for this purpose, it matters not whether he is allowed to file his petition at once as matter of right, or whether he is required to obtain leave of the court to do so after notice to the adverse party. In either case he has begun the proceeding. *547 He ought not to lose the benefit of this diligence because he cannot obtain the sanction of the court within the time prescribed. He may fail to do this without any fault of his own — as, for example, from the failure of the court to sit. The language of the statute requires that the absent defendant shall do an act within the time; namely, that he shall “petition to have the case reheard;” it does not require anything more. If we say he must do more, we go beyond the statute, unless indeed, we can say, that a party does not petition the court until the court agrees to entertain his petition. *Upon the view which I take, the degree of diligence required by this statute is certain and definite, and is the same in all cases. But if leave of the court must be obtained after notice to the adverse party, the diligence to be used to avoid the bar will be different in different cases, in proportion to the greater or less time requisite for giving the notice and getting the leave. If notice to the other party is necessary, the court has no discretion to dispense with it; and if it had, it surely ought not to depend on the discretion of the court whether the party shall be in time or not. Suppose the court, upon hearing the application, refuses to give the leave, and the party is obliged to appeal. The time may run out before he can obtain the leave by the judgment of the appellate court. Is he, in such a case, to be turned out of court because he has not obtained the leave of the court within the time, when he has been doing his utmost for years to obtain it? Or, suppose the party should fail to get the leave of the court in consequence of the failure of the court to sit. Is the delay in such a case to be imputed to him? This particular difficulty might be removed by holding that it is the notice to the adverse party, and not the leave of the court, which determines the application of the statutory bar. But this construction is not sustained by the language of the statute, or by the analogies of the law in like cases, and is liable to most of the objections which apply to the other.
The view which I have been urging makes the construction of this statute conform to the analogies in like cases. Thus, under a former law, it was provided that no super-sedeas, &c., should be “granted” after five years. It was held, that the order allowing a supersedeas was the commencement of proceedings, so as to avoid the bar of the statute, though the supersedeas bond was not given, and of course the supersedeas was not issued within the five years. *Overstreet v. Marshall & al., 3 Call 192. By the act of 1830-31, it was provided, that no petition preferred to the Court of Appeals, or to any judge thereof, should be received or allowed unless preferred within five years. It was held, that the bar of the statute was avoided by the presentation of the petition to the court or judge within five years, though the appeal, &c., should not be allowed within that time, or though it should be allowed on condition that a bond should be given, which was not given in that time. Williamson v. Gayle, 4 Gratt. 180. And under the old law first alluded to, the court went further, and held, that although an order allowing a superse-deas had not been made within the five years, yet as a petition had been presented which, through inadvertence in the court, had not been acted on until after the time i had elapsed, the limitation of the statute did not apply. Pugh’s ex’or v. Jones, 6 Heigh 299.
The absent defendant is proceeded against without notice by service of process, and, it may be, without any actual knowledge of the suit. The court can make no personal decree against him that will be binding upon him. 3 Gratt. 98; 9 How. U. S. R. 336; 24 Id. 195. When he comes forward to controvert what has been done behind his back, as it were, and offers to submit himself to the jurisdiction of the court, his proceeding should not be treated with disfavor, but the contrary. Why, then, should we, by construction, exact conditions from him not plainly required by the language of the statute, and not conformable to what is required in analogous cases?
Ferguson, therefore, commenced his proceedings in time, and saved the bar of the statute. But after doing so he delayed for more than five years to give notice of them to Hittlejohn, and then took no other step until seven years later. This would appear to have been great laches, and might, in the absence of explanation, have au-thorHed *'the Circuit Court to dismiss the proceedings, if a motion had been made to that effect. Anderson’s adm’r v. Lively, 6 Heigh 77. But the court, in that case, would have acted not on the ground that the proceedings were barred by the statute, but on the ground of laches in their prosecution, and the action of the court would have depended on its discretion, under all the circumstances. Williamson v. Gayle, 4 Gratt. 180. No motion to dismiss the proceedings on this ground was mede in the Circuit Court, and there is nothing to show that this ground was shown for cause when Hittlejohn showed cause in 1866 against filing the petition and answer. As Ferguson has not had an opportunity of explaining his delay, I do not think this court ought now to dismiss his proceedings on that ground. The delay was not so great but that the court can see that it might perhaps have been satisfactorily explained. The case must, therefore, be considered upon its merits.
Hittlejohn and Ferguson each claimed to have an order drawn by Robinett on the James River and Kanawha Company: that of Hittlejohn being for $783, and that of Ferguson being for the whole balance due from the Company to Robinett. Hittle-john’s order, which he filed with his bill, bears date the 8th day of February, 1839 while Ferguson alleged that his order bore date the first day of the same month. It did not appear which of these orders was first presented or made known to the Corn- *548 pany, so that the question as to the priority of right between them depended on the priority of date alone.
The answer of the James River and Ka-nawha Company disclaimed all knowledge as to the order of Littlejohn, but did not dispute its genuineness, or expressly call for proof of it. It was treated as genuine by the commissioner and by the court, and proof Of it was not insisted on by the Company. Ferguson did not dispute the genuineness of Littlejohn’s order, or call for proof of it, in his ^answer or before the commissioner, and it was treated as genuine throughout the case. Under these circumstances, it was too late to make the objection in this court to the want of proof of Littlejohn’s order. Anderson & al. v. De Soer, 6 Gratt. 363. Besides, the bill alleges that the order was “drawn” by Robinett, and this was sufficient under the Code (ch. 171, $ 38) to dispense with proof of the signature to the order, in the absence of a denial of it under oath, even though proof had been expressly called for. This provision of the code furnishes a rule of evidence, and it applied to this case, though the bill was filed before the Gode went into operation. Somerville v. Wimbish, 7 Gratt. 205; Usher’s heirs v. Pride, 15 Gratt. 190. It must, therefore, be taken as a fact in the case, that Little-john held an order from Robinett bearing date the 8th day of February, 1839.
The bill, after alleging that the plaintiff held an order dated the 8th day of February, 1839, and that he had presented it to the Company, proceeded to allege, that another order was presented to the Company from Robinett, in favor of Ferguson, for the whole balance due from the Company to Robinett, and then uses these words, “which [that is, Ferguson’s order] purports to have been drawn also on the 8th day of February, 1839, and it is pretended was drawn before the order in favor of your orator.” The answer of the Company did not pretend to any actual knowledge as to Ferguson’s order.' Ferguson, in his answer, alleges that the statement of the bill in relation to the date of his assignment is untrue, and then proceeds thus: ‘ ‘The date of the said assignment to this respondent was the 1st, of February, (not the 8th of February,) 1839, and the assignment was actually made on the said 1st day of February, when it bore date.” It was alleged that this order had been left in the possession of the James River and Kanawha Company, and had been lost.
*The bill called for no discovery as to the date of Ferguson’s order. The allegation of the answer in respect to the date of Ferguson’s order was affirmative matter, not responsive to any allegation of the bill, and the burden, therefore, lay on Ferguson to prove it. 2 Rob. Pract. (old) 330, and cases cited; Clarke v. White, 12 Peters R. 178; opinion of Green, J., in Taylor v. Moore, 2 Rand. 563; Leas’ ex’or v. Eidson, 9 Gratt. 277.
The case of Ferguson, therefore, derives no support from his answer, and must depend upon the evidence. There is no direct evidence in the case as to the date of Ferguson’s order, nor is there any direct evidence even of its existence. The commissioners to whom the case was referred, relied upon several facts and circumstances, which they considered sufficient to establish that Ferguson had an order from Robinett for the whole balance due him by the Company, and that it bore date on the 1st day of February, 1839. I shall not consider the question, whether Ferguson had an order at all, because it is immaterial whether he did or did not have one, unless it was of prior date to Littlejohn’s. I shall confine myself to an examination of the grounds which are relied on to establish that the order of Ferguson bears date on the 1st of February, 1839, or before that of Littlejohn.
The first thing relied on is the opinion given by Mr. Baxter as counsel for the James River and Kanawha Company, in favor of Ferguson’s priority over Little-john, and of the propriety of paying the money to him upon his giving a bond of indemnity. The production of this paper may prove that Mr. Baxter gave such an opinion, and that he founded his opinion on the hypothesis of a certain state of facts, but it can certainly prove no more. Even if the facts on which the opinion was based had been stated as being within the knowledge of Mr. Baxter, the statement of them in this paper would not be evidence of them. *But it is evident from the opinion, that Mr. Baxter had never seen Littlejohn’s order, (the bill had not then been filed,) and that he relied upon Ferguson’s representation to him that his order was prior to Littlejohn’s.
The next thing relied upon is, the recital in the bond which Ferguson gave to the Company on the 15th day of October, 1839, on receiving from them the balance due to Robinett, and by which he undertook to defend Littlejohn’s suit, and to indemnify the Company against Littlejohn’s claim. This bond recites as a fact, that Robinett made the transfer to Ferguson by an instrument of writing bearing date the 1st day of February, 1839.
The production of this bond may prove that the Company paid the money to Ferguson on the ground that his order was believed to be of prior date to Littlejohn’s; or, if you please, on the ground that his order was believed to bear date on the 1st day of February, but it does not prove that in point of fact it did bear that date, or any date prior to that of Littlejohn’s order. The recital is really nothing more than the declaration of the Company and of Ferguson affirming the existence of the facts recited as the motive and justification for what they then did. And now, when the propriety of what they then did is called in question, depending upon the truth of the facts recited, they produce their own declaration that these facts existed, to prove in their own favor that, in point of fact, they did really exist.
*549 It is undoubtedly true, that upon reading' the recital in this bond we feel that there is a certain degree of probability that the parties concerned took pains to ascertain the date of Ferguson’s order and to recite it correctly, and in proportion to our confidence in the intelligence and integrity of these parties, we feel a greater or less degree of moral conviction that the facts really were as they recited them to be. But if there had been no bond and *no recital, and nothing but the payment of the money by the Company to Ferguson, we might have felt, in like manner, that there was a certain degree of probability, and perhaps a very high degree, that the order in favor of Ferguson was the oldest, from the fact that the Company, with the means of ascertaining the facts and a motive for doing so, paid the money upon it. But this would be neither more nor less than to make the mere payment of the money justify itself. And yet, in principle, it would be of a piece with what I am now considering.
There is but one other circumstance relied upon to prove the date of Ferguson’s order. It is the endorsement on the power of attorney from Robinett to Ferguson. We have no explanation of this endorsement. We do not know when, why, or by whom it was made. We do not know to what the date “February 1st, 1839,” refers. Mr. Mun-ford, the present secretary of the Company, supposes it to refer to the time at which the power of attorney was first made known to the Company. It certainly did not represent the date of the power of attorney on which it was endorsed. What ground is there for saying that it had reference to an assignment on another paper which is not shown to have been with the power of attorney, and that it was intended to indicate the date of that assignment? What is there to show that the person who made that endorsement did not regard the power of attorney as in effect an assignment, and refer to it as a power of attorney and assignment?
It is evident, therefore, that this endorsement, even if it could be used at all as evidence of what is stated in it, proves nothing to the present purpose.
It seems to me, therefore, to be very clear, that Ferguson failed to establish that his order was dated on the 1st of February, 1839, or that it bore date prior to Littlejohn’s. In the absence of any evidence on the subject, '"'the presumption must be that Littlejohn’s order was given first. For it would have been an act of folly as well as a fraud in Robinett to give Littlejohn an order for the amount of his debt when he had already given Ferguson an order for the whole balance due him from the Company. The court will not presume this, in the absence of all evidence, but will presume the contrary.
After Littlejohn filed his bill in October, 1839, he took no other step in the case until 1849, when he obtained orders of publication against Robinett and Ferguson as absent defendants. In the absence of explanation, this seems to have been great laches; but I do not think we are authorized to dismiss the bill on that ground. If we -were to do so, we should go beyond any former decision of this court. In Chinn v. Murray, 4 Gratt. 348, this court sustained a suit where there had been a much greater interruption in its prosecution. In this case, the James River and Kanawha Company had been served with process, and Ferguson, though not served with process, was aware of the suit, and stipulated to defend the Company in it. He might, therefore, have taken steps in the name of the Company — if he did not choose to appear — to have the suit dismissed, if not duly prosecuted. It was his laches, therefore, as well as the plaintiff’s. On this ground Lord Redesdale refused, in Gifford v. Hort, 1 Sch. & Lef. R. 386, to dismiss a bill which had been pending, without active proceedings, for forty years; the defendant insisting on the plaintiff’s laches in proceedings as a bar to the relief asked for. In Crawford’s ex’or v. Patterson, 11 Gratt. 364, where this court dismissed the bill on account of the laches of the plaintiff in the prosecution of his suit, the delay was twenty-three years; the defendants against whom the claim was made, and all the parties who were cognizant of the transactions, had died, and there was strong ground to hold that the plaintiff had acquiesced in *a report made before proceedings in the suit were suspended. In this case, Ferguson had full opportunity to make his defence. His defence rested on a single fact, the importance and conclusiveness of which he well knew, and which, if true, could be easily proved. The defence of the Company was the same. If j he chose to neglect his own defence and ; that of the Company upon an assumption ! that Littlejohn had abandoned his claim, : it was his own folly.
, These views dispose fully of the case of i Littlejohn v. Ferguson & al., and render it | unnecessary to consider any other question ! raised in that case. I will add, however,
¡ that if Ferguson had established the priority I of his order, yet as it was admitted to have j been given only as a security for debts and I liabilities, an account should have been , ordered to ascertain the amount due upon ] it, so that the residue of the fund, if any, j might be applied to Littlejohn’s claim,
These views likewise dispose of most of the questions in the case of James River and Kanawha Company v. Littlejohn. There was no exception to the report of the commissioner in that case ; but none was necessary.
\ The commissioner reported that he had | heard no evidence, and that his conclusions j were founded entirely upon exhibits in | the case, to which he referred in detail. Whether these papers sustained the conclusions of the commissioner was a question arising on the face of the report. One other question, however, has been raised in that case which remains to be considered.
It is insisted that Robinett was an indispensable party to Littlejohn’s bill, and *550 that although his name was.included in the subpoena, and he was proceeded against by publication, he cannot be regarded as a party in the cause, according to the case of Moseley v. Cocke, 7 Leigh *224, and other cases, and that the decree must be reversed on that ground.
It is sometimes laid down, that to a bill filed by the assignee of a chose in action, the assignor is in all cases an indispensable party. It was so said by Judge Scott, delivering the opinion of a special court in Corbin v. Emerson, 10 Leigh 663. But this language ought to be understood with reference to the case in which it was used. There was no proof of the assignment in that case; it was not before the court, and the court could not say, therefore, whether it was absolute and unconditional or otherwise. The want of proof of the assignment seems to have been the point mainly urged in the argument, and the authorities bearing on the necessity of making the assignor a party were not cited. That there are cases in which the assignor is not a necessary party to a bill filed by an assignee, appears from Newman v. Chapman, 2 Rand. 93, which was not cited in Corbin v. Emerson. I do not think, therefore, that Corbin v. Emerson can be regarded as settling, that in all cases whatsoever the assignor is an indispensable party.
It is a general rule, that all persons interested in the subject' matter of the suit must be made parties; and this rule is founded on the reason, that courts of equity aim “’to do complete justice, by deciding upon and settling the rights of all persons interested in the subject matter of the suit, so that the performance of the decree of the court may be perfectly safe to those who are compelled to obey it, and also that future litigation maybe prevented.” Story Eq. Pl. § 72; Clark v. Long, 4 Rand. 451; Jameson’s adm’r v. Dashields, 3 Gratt. 4. There are exceptions to this general rule which, in the language of Judge Story, “will be found to be governed by the same principle, which is, that as the object of the general rule is to accomplish the purposes of justice between all the parties *in interest, and it is a rule founded, in some sort, upon public convenience and policy, rather than upon positive principles of municipal or general jurisprudence, courts of equity will not suffer it to be applied so as to defeat the very purposes of justice, if they can dispose of the merits of the case before them without prejudice to the rights or interests of other persons who are not parties.” Story Eq. PI. § 77. Consistently with these' general principles, Judge Story, upon the authority of numerous cases which he cites, lays down the true doctrine as to assignors to be this, that where the assignment is absolute and unconditional, leaving no equitable interest whatever in the assignee, and the extent and validity of the assignment are not doubted or ■ denied, and there is no remaining liability in the assignor to be affected by the decree, it is not necessary to make the assignor a party. And Chancellor Walworth, in a case not cited by Judge Story, held, after an examination of the authorities, that where the assignment purports to transfer the whole interest of the assignor, and there is nothing in the pleadings or proof to induce a belief that it did not really do so, it is not necessary to make the assignor a party. Ward v. Van Bokkelen, 2 Paige’s R. 289.
In this case no decree was sought against Robinett. Eerguson and the James River and Kanawha Company claimed that Robi-nett had parted with his whole interest, and they both treated the controversy as one between Rittlejohn and Eerguson alone. Hence, when the Company paid the money to Eerguson, it took from him indemnity against Kittlejohn, but none against Rob-inett. And accordingly' neither of them objected in the court below to the failure to make Robinett a party. If it appeared that Robinett was a necessary party, this court would reverse the decree on that ground, although the objection was not taken by demurrer or otherwise in the Circuit Court. *Clark v. Long, 4 Rand. 457, and cases cited; Taylor’s adm’r v. Spindle, 2 Gratt. 44. But this court will not reverse a decree for the failure to make a party where it appears affirmatively that the party', if he had been brought before the court, would have been merely a formal party, against whom no decree was asked, and whose presence was not necessary for the protection of any of the defendants.
I am of opinion, therefore, that the decree in Littlejohn y. Eerguson & al. should be reversed, and that in James River and Ka-nawha Company v. Littlejohn affirmed.