# Charleston.

## NEWMAN v. MOLLOHAN.

### Decided May 1, 1877.

1877.
January Term.

A joint judgment, in a suit in which an attachment had issued against all the defendants as non-residents, having been rendered against several of the defendants, one of them, who had plead, took an appeal, and the Court of Appeals affirmed the judgment. Another of the defendants against whom this joint judgment was rendered, a non-resident, who had not plead, after due notice, then moved the circuit court who had rendered the judgment to reverse and annul the same, because the order of publication against him had not been made in the manner required by law, and because there had been a personal judgment against him, though he had never been served with process, and for other errors apparent on the face of the record. HELD:

That the circuit court properly overruled his motion, as after the affirmance of the judgment by the Court of Appeals, no defendant could make a motion in the circuit court to reverse or modify the judgment, though the record of the case in the Court of Appeals fails to show that the defendant making the motion was notified of the appeal, it being conclusively presumed he was so notified, and that all the questions raised by his motion had been considered and decided by the Court of Appeals when it affirmed the joint judgment.

This case was brought into this court by a writ of error and *supersedeas* allowed upon the petition of John Green Newman, to a final order and judgment of the circuit court of Kanawha county, rendered on the 16th day of July, 1872, on a motion made by him to reverse, as to himself, a judgment rendered by said court on the 18th day of April, 1866, in favor of Charles Mollohan,

against said Newman and others, in a certain action of trespass then pending in said court.

GREEN, PRESIDENT, delivered the opinion of the court, in which may be found a sufficient statement of the case.

The record does not disclose what Judge presided in the circuit court at the time of the trial below.

*Wm. A. Quarrier*, for defendant below and plaintiff in error, referred the Court to:

Code Va., ch. 170, §12; *O'Brien v. Stevens*, 16 Gratt., 613; *Davis v. Commonwealth*, 13 Gratt., 139; Code W. Va., ch. 134, §6; Cons. W. Va. of 1863, art. 6, §9; 2 Tuck. Com., 333; 2 Wm.'s Saund., 101; 4 Rand., 390; *Vandiver v. Roberts*, 4 W. Va., 493.

*James H. Ferguson* and *W. Mollohan*, for plaintiff below and defendant in error, relied upon the following authorities:

8 Bac. Ab. (Phil. Ed., 1840); 8 "Statutes," 251; Dwarris, 632; Magdalen College case, 11 Rep., 67, 74, 75; *Acheson v. Everett*, Cowp., 382, 391; Sedgwick on Stat. and Const. Law, 359; 3 Stark. Ev., 1043, 1277; 3 Tho. Co. Litt, 328; *Field v. Gibbs*, 1 Pet. C. C. R., 155; *Caldwell v. Shields & Somerville*, 2 Rob., 305; *Corrie's ex'rs v. Campbell*, 1 Wash., 153; *Buckingham, &c., v. McLean*, 13 How., 150; *Ferrar & Brown v. United States*, 3 Pet., 459; *Gracie v. Palmer*, 8 Wheat, 699; *Pollard & Pickett v. Dwight et al.*, 4 Cranch, 428; *Bank of the Valley v. Bank of Berkeley*, 3 W. Va., 386; *Fee v. Big Sand Iron Co.*, 13 Ohio St., 563; Code Va., ch. 125, §16, 21; *O'Brien et al. v. Stevens et al.*, 11 Gratt., 610; Code Va., ch. 182, §15; *Platt v. Howland*, 10 Leigh, 507, 510; *Barbee & Co. v. Pannill*, 6 Gratt., 442; *Lenows v. Lenow*, 8 Gratt., 349; *Meadows v. Justice*, 6 W. Va., 198; 2 Field's Pr., 1188 *et seq.*; *Graham & Scott v. Graham & Lane*, 4 Munf., 205; *Coal River Navigation Co. et al. v. Webb*, 3 W. Va., 438.

62

The Court having requested a further argument, *Wm. A. Quarrier*, for plaintiff in error, cited the following authorities:

*Lewis v. Botkin*, 4 W. Va., 533 ; *Myrick v. Adams*, 4 Munf., 366 : Freeman on Judgments, §127; *Bryland v. Bryland*, 18 Ill., 552; *Broomfield v. Dyer ; Moss et al v. Moss' adm'r*, 4 H. & M., 299 ; *Pittman v. Planters' Bank*, 2 Miss., 217 ; Code Va., ch. 182, §15 ; Code W. Va., ch. 134, §6; *Outram v. Moorehood*, 3 East, 346 ; 6 Rob. P r., 476 ; *Cleaton v. Chambliss*, 6 Rand., 93 ; *Craddock v. Turner's adm'r* 6 Leigh, 128.

*James H. Ferguson* and *W. Mollohan*, for defendant in error, in reply, cited the following additional authorities:

*Harvey v. Skipwith*, 16 Gratt., 410 ; *Griffin's ex'r v. Cunningham*, 20 Gratt., 32, especially Judge Christian's opinion, on page 50; *Reid's adm'r v. Striders' adm'r*, 7 Gratt., 76 ; *Lanier et al. v. Cocke et al.*, 6 Munf., 580.

This was an action of trespass brought in March, 1865, in the circuit court of Kanawha county, by the plaintiff, Charles Mollohan, against the defendants, John Green Newman, John N. Clarkson, Thomas B. Swann, Joel S. Quarrier, Nicholas Fitzhugh and James F. Lewis, all non-residents of the state of West Virginia. And it was accompanied by an attachment regularly issued against the property of each and all of the defendants, which was levied on property of each of them. The plaintiff, a citizen of Ohio, was arrested when General Wise, in command of a confederate force in July, 1861, occupied Kanawha county, and had been imprisoned till October, 1861; the defendants were soldiers under the command of General Wise, and they, or some of them, as such, had more or less connection with the arrest and imprisonment of the plaintiff, Mollohan. The order of publication against the defendants was regular-

ly made on the first Monday in April, 1865. Its pub-

lication was commenced on the 26th day of April, 1865,
on which day, a copy of it was posted at the front door
of the court house.   And on the first Monday in June,
1865, an entry was made at rules, reciting that the order
of publication had been duly published and posted ac-
cording to law, on the motion of the plaintiff, by his at-
torney, the case was set for trial at the next term.  On the
17th day of June, for reasons appearing to the court, the
case was continued to the next term.  On the 12th day of
December, 1865, the following entry was made :

"This day came the parties, by their attorneys, and
thereupon, on motion of the defendants, and for reasons
appearing to the court, this case was continued to the
next term, but at their costs."

On the 17th day of April, 1866, this entry was made :

"This day came as well, the plaintiff, by his attorney,
as the defendants, Joel S. Quarrier, James F. Lewis and
Thomas B. Swann, by their counsel, and also the defend-
ant, Nicholas Fitzhugh, in proper person.  And there-
upon the defendant, Nicholas Fitzhugh for himself,
pleaded not guilty, and put himself upon the country,
and the plaintiff likewise.  He also filed a special plea
in writing, to which special plea the plaintiff demurs,
which demurrer being argued and considered, was sus-
tained by the court; and the defendants, Quarrier,
Lewis and Swann, plead not guilty, and put them-
selves upon the country, and the plaintiff, like-
wise; the defendant, Swann, tendered a special plea
in writing, and the defendants, Quarrier and Lewis,
jointly tendered a special plea in writing, to which two
special pleas the plaintiff objected, which objections be-
ing argued and considered, were sustained by the court,
and said special pleas rejected; and on motion of the de-
fendant, Joel S. Quarrier, the trial on the issue thus
made was continued, as to him, until the next term; and
by consent, the same was continued as to the defendant,
Swann; and the trial on the issue as to the defendants,

Fitzhugh and Lewis, and on the order of enquiry as to the defendants, Newman and Clarkson, was then proceeded in, and thereupon came a jury, who being selected by lot, were impanelled and sworn the truth to speak upon the issue joined as to the defendants, Fitzhugh and Lewis, and well and truly to assess the plaintiff's damages as to the defendants, Clarkson and Newman, and also to support the Constitution of the United States, and of this state, who, having heard the evidence in full, and the arguments of counsel in part, were adjourned till the next day."

The next day they found the defendant, James F. Lewis, guilty, and assessed the plaintiff's damages against him and John N. Clarkson and John Green Newman, at the sum of $3,000; and they further found the defendant, N. Fitzhugh, not guilty. Whereupon, James F. Lewis, by his attorney, moved the court to set aside said verdict and grant him a new trial, which motion was overruled, and judgment entered that the plaintiff recover against the defendants, Lewis, Clarkson and Newman, his damages aforesaid, with interest thereon from April 18, 1866, and his costs. The defendant, Lewis, filed two bills of exceptions. The first was to the rejection of his and Quarrier's joint special plea, which was, "that the trespass in the declaration mentioned and described was committed more than one year anterior to the institution of this suit." And the second was to the overruling of his motion for a new trial. This bill of exception sets forth all the facts, and shows the character of the case to be as hereinbefore stated.

In 1868, Lewis appealed from this judgment of the court, and assigned as errors. First, that it was error to reject the plea of the statute of limitations, the act of March 1, 1865, excluding the time from the 17th day of April, 1861, to March 1, 1865, he alleging was unconstitutional, when the bar of the statute of limitations was complete and perfect when this act passed, and that if it were constitutional, the plea of the statute of limitations

1877.
January Term.

Newman
v.
Mollohan.

ought nevertheless to have been received, and the plaintiff should have replied specially this act of March 1, 1865. And he assigned as another error that the verdict of the jury was not warranted by the facts proven, insisting that the late war had been recognized by all the departments of the government as a civil war, and as a consequence all the rights, powers, privileges and duties that pertain to such a state of things, belonged to each beligerant party. And he further insisted that even if this were not the case, the facts proven did not make him a trespasser, his connection with them not being such as under any circumstances ought to make him responsible. These were all the errors assigned or grounds assumed in his petition. On the 7th of March, 1870, the Supreme Court of Appeals decided that the said judgment be affirmed, "the Court being of opinion for reasons stated in writing, and filed with the record that there is no error in the said judgment. These reasons are not now among the papers of the clerk of the court, and were never published, the case never having been published in the reports of the cases decided in this Court.

John Green Newman then gave Charles Mollohan, the plaintiff, notice that on the 29th day of October, 1870, he would move the circuit court of Kanawha county, to reverse the judgment rendered by said court, on the 18th day of April, 1866, in his favor against James Lewis, John N. Clarkson and John Green Newman, the said judgment having been rendered by default, against Clarkson and Newman, for the following errors: 1st. The order of publication was not posted as required by law. 2nd. That the cause was set for hearing and an order of enquiry was entered at rules and the case put upon the trial docket of the court before a month had elapsed after the completion of the publication of the order of publication. 3d. It was error to render a personal judgment against Clarkson and Newman, upon whom no process had been served, It was only

competent for the court to have sold the attached property. 4th. For other errors apparent on the face of the record not specified. And the due service of this notice being proven the case was docketed regularly. And on the 16th day of July, 1872, the court having inspected the record, as well as the judgment rendered by the Court of Appeals in the same cause, was of opinion that there was no error in said judgment and refused to reverse the same. From this order of the court, John Green Newman appealed in April, 1874. In his petition he assigns the same errors that are assigned in his said motion to the circuit court as errors in the original suit, and insists that on account of these errors the circuit court ought to have vacated and set aside this original judgment, and that the judgment of the circuit court refusing to do so was therefore erroneous, and he further insists that the fact that a co-defendant, Lewis, had taken the original case to the Court of Appeals ought not and can not effect the question arising between said Mollohan and him, which had not been passed upon by the Court of Appeals. 1st. Because the judgment of of the Court of Appeals was anterior in time to the judgment of the circuit court complained of. 2nd. By virtue of section six of chapter one hundred and thirty-four of the Code of West Virginia, the Court of Appeals was forbidden to pass upon the errors complained of in the petition until after an effort had been made in the court · which committed these errors to correct them by notice

The parties agreed in writing, that the judgment of the Court of Appeals heretofore rendered, should have the same effect as if now pleaded as an estoppel to the appellants writ of error, if capable of being so pleaded.

The first question to be determined is, whether the circuit court had any jurisdiction to hear the motion made by the defendant, John Green Newman. This cause was argued and submitted to this Court in the lifetime of the lamented Judge Paul. On this preliminary question, he had reduced his views to writing. These views are

so entirely coincident with my own, after a careful consideration of the subject, aided by additional and able arguments of counsel, and they are so well expressed, that I shall adopt them as my own, making such additional remarks as I deem necessary.

Judge Paull says:

"Upon this statement, it is obvious that the first question to be determined is, whether this Court has now any further jurisdiction of this case. It has already been said that this is a joint judgment against these defendants. It was conceded in argument, and is unquestionably the law, that a joint judgment against two or more defendants is an entirety, and cannot be affirmed as to some, and reversed as to others, but must be affirmed as to all, or reversed as to all. 2 Tucker, Com., 333; 4 Rand., 390; 4 West Va., 493.

"Upon the application of James F. Lewis, one of said defendants, this case was brought into the Supreme Court of Appeals, as hereinbefore stated, and in 1870, said judgment against defendant, Lewis was affirmed. What then is the effect of this judgment of affirmation against Lewis, upon the right of his co-defendant, the present appellant, to be now heard in this Court on a writ of error obtained by himself? A glance at the prevailing principle and practice at common law in cases of this kind, may be useful in this connection. We learn from numerous reports what has been the practice in the English courts for many years, and we find that it has been well and long established, that where there is a joint judgment against several persons, the writ of error must be brought in the name of all who are living, and aggrieved by the judgment; and this, in order to avoid the inconevnience which would otherwise follow, of any defendant bringing a writ of error by himself, and thus hinder the plaintiff from his execution for a long time, and from having any benefit of his judgment, though it might be affirmed once or oftener. It is, moreover, obvious that such mode of proceedure would greatly tend

1877.
January Term.

Newman
v.
Mollohan.

to prolong litigation. Hence, it was held that if the writ of error in such case be brought by one or more of the defendants only, it may be quashed. And in order to avoid wrong and inconvenience to the party, or parties, who might desire to prosecute such writ, when brought in the name of several parties, and any one or more of them refused to appear and assign errors, they must be *summoned and severed*, after which the writ of error may be proceeded in by the rest alone. In *Hacket v. Herne*, Carthew, 8, it was held, judgment against several and a writ of error by one, not good. Here there were two defendants, and one alone brought a writ of error, and upon demurrer to the writ it was quashed, because both, say the court, ought to join in this writ; and if one of them should refuse, he should be summoned and severed. So, also, *Walter v. Stokoe*, 1 Ld. Raymond, 71 ; *Cooper v. Ginger*, 1 Strange, 606 ; 2 Tidd's Pr., 1189. In our own country, the same doctrine and practice have prevailed. In the case of *Fotterall v. Floyd*, reported in 6 Serg. & R., one of several defendants had taken out a writ of error alone, and the court say, in delivering its opinion, after referring to the English practice and authorities: ' But if it is intended to say that each may prosecute his writ of error separately, it cannot be law, because contradicted by many better authorities. It is said to be extremely hard that one defendant should be deprived of his writ of error because the other refuses to join in it. But no such hardship exists. One defendant may sue out the writ in the name of all, and if the others refuse to join in the prosecution, they may be summoned and severed, after which they never again can maintain a writ of error, but he who sued out the writ may go on alone. In this manner, all hardship on the defendant, and all inconvenience to the plaintiff, are avoided.' See, also, 2 Tuck. Com., 323, to the same effect. The writ of error was quashed. In the case of *Smyth v. Strader, Perine & Co.*, the writ of error was dismissed on motion, it appearing vicious and defective, as

it did not set out the names of all the parties to the judgment in the circuit court; reported in 12 How., 327.

" In the case of *Smetters & Harris v. Rainey et al.*, 14 Ohio St. R., 287, the court, while recognizing this doctrine, say : ' We have already shown that the court must have the legal right and power to act upon *the entire judgment,* and *all the parties to it,* before they can reverse or modify it as to any one of them. And it would seem to follow, as a logical sequence, that until *all* the parties to the joint judgment have been brought before the court in some form, it acquires no legal power or authority to reverse or modify any part of it. There· is a want of jurisdiction over the subject matter." This principle or practice of the common law, so long established, has not been changed or modified, so far as I am aware, either in the State of Virginia, or in this State, by any statutory provision. Section fifteen of chapter one hundred and eighty-two of the Code of Virginia, which was in operation when the writ of error by defendant Lewis was obtained, simply indicates the method, or provides the· means, by which this principle of the common law may be carried out. It directs that the clerk of the court wherein any appeal, writ of error, or *supersedeas,* is docketed, shall, in a case in which it is allowed on petition, issue a summons against the parties interested, other than the petitioners, *that they may be heard.* This is also the statute of this State, §13, ch. 17 of session acts of·1872–3. In accordance with these views of the law, and in order to give it proper effect, it is manifestly the duty of the appellate court, when a writ of error has been obtained by one or more only of several defendants in a joint judgment, either to quash the writ, as we have seen, was formerly done, or, what I think would now be a better practice, and perhaps the only one contemplated by the statute, to see that the requirements of the statute have been complied with ; that *all the parties in interest,* including, of course, the other defendants, have been summoned, and are thus before

the court, that, in the language of the statute, ' they may be heard.' They can thus appear, and assign errors alleged to have been committed against them, or either of them, in the proceedings and judgment of the court below, or they can refuse and be severed, and thereupon any one or more so desiring can prosecute the writ themselves.

" Applying what we have now said to the case before us, we find that Lewis, one of three defendants in a joint judgment, obtained a writ of error alone, without, so far as the record indicates, naming the other parties; the Court of Appeals, upon inspecting the record, would discover at once, if not otherwise informed, that he was but one of three defendants in a joint judgment; their duty then, as we have seen, in the absence of the statute at least, would be to quash the writ. This, however, the court did not do, but, on the contrary, took jurisdiction of the case, heard it on its merits, and affirmed the judgment as to Lewis. Under these circumstances, this court must now presume beyond all question, that the Court of Appeals, knowing its duty in the premises, and the law applicable to, and governing its action in such cases, in taking cognizance of the case, did so only after taking the necessary course to invest itself with full and complete jurisdiction over all the parties interested, and over the entire subject matter presented in the record; that the Court, therefore, did see that all parties interested were summoned, as provided by the Code, and that they were heard, and the course which they then chose to pursue, was determined by themselves, before the Court entered upon the hearing and consideration of the case. This course was essential, that the action of the Court might be conformed to the principles and requirements of the common law, and of the statute. It was essential in order to preserve these principles in their integrity; to prevent multiplicity of suits; to protect the interests of those jointly bound in the judgment, and to secure the plaintiff from vexation and delay in enforcing his judg-

1877.
January Term.

Newman
v.
Mollohan.

ment, if found ultimately entitled so to do; in a word, it was essential to the Court's complete jurisdiction over the case. That the Court did all that was necessary to secure these objects, and to vindicate its own action, is a just and reasonable presumption. When the Appellate Court then, or an Appellate Court now under similar circumstances, by taking this course in obedience to the law, becomes invested with full jurisdiction over all the parties interested, and over the proceedings and judgment of the court below, there can be no doubt that it has full power to look into all matters of error assigned by any of the parties, although they may, as in the record before us, differ in their character respectively, and if it so determine, may affirm the judgment as to all, or if error be found in favor of one of said defendants, reverse it as to all. The exercise of this power over the judgment as to each and every one of the parties, necessarily results from the courts having thus obtained under the law, complete jurisdiction of the parties and the case. Also among the rules of this Court is the following: 'When a judgment or decree is reversed either in whole or in part, on the ground of error against the appellant or plaintiff, in any appeal, writ of error, or *supersedeas*, yet if error is perceived against the appellee, (any) or defendant, the court will consider the whole record as before them, and will reverse the proceedings, either in whole, or in part, in the same manner, as they would do, were the appellee or defendant to bring the same before them, either by appeal, writ of error, or *supersedeas*, unless such error be waived by the appellee, or defendant, which waiver shall be considered a release of all error as to him.' The rule as established in chancery proceedings at least, is thus stated, in the case of *Walker's ex'r et al. vs. Page et al.*, 21 Gratt., 636. But when the parties appealing, and the parties not appealing, stand upon the same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment, this court will consider the

whole case, and settle the rights of the parties not appealing as well as those who bring their case up by appeal. When, however, the parties stand upon distinct and unconnected grounds, when their rights are separate, and not affected equally by the same decree, or judgment, then the appeal of one will not bring up for adjudication, the rights or claims of the other. This rule, by which the Court will look, under certain circumstances there set forth, into the whole case, and settle the rights of parties, as well those not appealing, as those appealing, applies with still greater force to the case of a joint judgment, when the parties interested have all been summoned, and where the judgment must be affirmed as to all, or reversed as to all. It is obvious that the sixth section of chapter one hundred and thirty-four of the Code, which requires a party to apply to the court below for the correction of certain errors, before applying to the Appellate Court, cannot be regarded as in conflict with the right of the Appellate Court thus to proceed, when once in rightful possession of a case, and jurisdiction over the parties.

"The appellant, John G. Newman, must under these views, be now regarded, as having had his day in court; as having been heard, and his rights determined. The judgment being affirmed as to Lewis, was necessarily affirmed as to all the defendants in the joint judgment.

"The appellant's writ of error must be dismissed, at his costs, as improvidently awarded."

I shall add nothing to the reasoning of Judge Paull, which led him to the conclusion that if an appeal was taken by one of several joint defendants to a joint judgment all the other defendants are bound by the judgment of the Court of Appeals, and no other appeal can ever be taken by any of them. This conclusion is fully sustained by the authorities which Judge Paull cites, when the other defendants have been notified. And his conclusion that the Court of Appeals is by common law, independent of statute law, conclusively presumed to have done everything that was necessary to invest it

with full and complete jurisdiction over all the parties to this joint judgment is equally sound. It is fully sustained by the decision of the court of appeals of Virginia, in *The Bank of Virginia v. Craig*, 6 Leigh, 438. In that case the circuit court of Spottsylvania, rendered a decree in favor of a ward for certain bank stock, against the Bank of Virginia, and in the same decree expressed the opinion that the guardian and his surities were also liable to the ward for such bank stock, but no decree was then rendered against them. The Bank of Virginia took an appeal from this decree. The sureties of the guardian were not parties to this appeal. They were not served with any process issuing from the Court of Appeals, and neither appeared in person, or by counsel, and had no opportunity of being heard in the appellate court. The Court of Appeals reversed the decree against the Bank of Virginia, and entered up a decree against the guardian and his sureties for the value of this stock. At the next term of the court of appeals a motion was made to set aside this decree against the guardian and his sureties, on whom no process from that court had been served, and in lieu of this decree to enter one dismissing, the bill as to the Bank of Virginia, and remanding the cause to the circuit court that the sureties might thus have the opportunity to controvert their liability. It was insisted by counsel, as it has been insisted in this case, that where a decree or judgment is rendered by the Court of Appeals, either in respect to matters or *parties coram non judice*, it might and ought to be set aside at a subsequent term. But the court overruled the motion on the ground that it could not then set aside a decree entered at a former term, whether it were objectionable on its merits or whether it was prematurely entered, before some of the parties against whom it had been entered had been summoned. This point has not again been brought before the Court of Appeals of Virginia or of this State. But this decision has frequently been referred to by the

Judges of the Court of Appeals of Virginia, in other cases, and always approvingly. Thus, Judge Brockenbrough, in *Towner v. Lane's adm'r*, 9 Leigh 262, speaking of this case, says, "a case than which one of greater hardship can hardly be imagined, and yet he approves this decision. The last time this decision is thus referred to approvingly is by Judge Moncure, in delivering the opinion of the court in *Campbell's ex'or v. Campbell's ex'or*, 22 Gratt., 649. It is true that this decision is not in accord with the decision of *Edmonds, et al. v. Crenshaw*, 14 Peters, 166. The Supreme Court in that case rendered a decree fixing a liability on one Crenshaw. It turned out afterwards that he never had been cited in the case, and at a subsequent term he moved the Court to set aside this decree, and the Court did so, and the previous mandate to the circuit court was revoked, and the decree of the Supreme Court, when the cause was not legally before it, was declared null and void. *Ex parte Crenshaw*, 15 Peters, 123. Though this is very high authority, yet this Court will follow the principles laid down in the decision of the Virginia Court of Appeals. It is not only based on reasons which it is very difficult to disregard, but it was rendered as long ago as 1837, and has, though frequently referred to, never been disapproved by any Judge of the Court of Appeals of that state, and it must be regarded as a binding authority in this Court. Judge Moncure, in pronouncing the opinion of the Court of Appeals in the case of *T. C. Campbell's ex'or v. A. C. Campbell's ex'or*, after reviewing the Virginia cases, uses this language: "The Virginia authorities seems conclusively to show, that after the end of the term of this Court, at which a judgment or decree may be entered, or at all events after the judgment or decree has been certified to the court below, it is too late to have the case reheard in this Court upon any ground of error of law or of fact, apparent upon the face of the judgment or decree, or of the record on which it was rendered. Whether the rule be founded on principle, or be

merely a rule of practice—it is alike absolute and inflexible. Public policy, if not necessity, requires that it should be strictly enforced even in cases of the greatest individual hardship. The law has been settled by these cases (cited before in his opinion) and has ever since been acquiesced in, and hence no recent cases are to be found in the Virginia reports." The decision of a case by the Court of Appeals can not be treated as a nullity, or be modified, or reversed, either by another state court, or by the Court of Appeals itself in any case, unless it be authorized by statute law.

I express no opinion now, as to whether, under the seventeenth section of chapter one hundred and twenty-four of the Code of West Virginia, page five hundred and ninety-eight, a defendant who was not served with process in the state, and who did not appear in the appellate court, and where no order of publication was made, may have the cause re-heard after the term of the court in which the appellate court rendered a final decree adjourned. This section has no application to the case now before this Court for its decision, except where it has been rendered against one who is not named as a party, either formally or informally, in the pleading; in which case such decree or judgment is a nullity. *Mosely v. Cocke*, 7 Leigh, p. 224. But Judge Paull's position is sound, that if the record simply fails to show that process has been served on parties who ought to have been appellees, both in Virginia and in this state, it is conclusively presumed, except where otherwise provided by statute, that jurisdiction has been fully acquired by the voluntary appearance of parties, or otherwise, whenever a judgment or decree is entered affirming or reversing the judgment or decree of the court below. The rendition by this Court, of a judgment or decree against persons who should have been appellees is, at common law, equivalent to an affirmation on the record that such parties were before the Court, as, without their so being, the Court could not have proceeded to decide the case.

·The last position assumed by Judge Paull, " that the sixth section of chapter one hundred and thirty-four of the Code of West Virginia, which requires the party to. apply to the court below in certain cases for the correction of errors before an appeal can be taken, can not be regarded as in conflict with the right of the appellate court to proceed to a final determination of the case, when once in rightful possession of it, and of jurisdiction over all the parties," is fully sustained by the Virginia and West Virginia authorities, though perhaps on the authority of the *James River and Kanawha Canal Co. v. Littlejohn* and *Littlejohn v. Fergusson*, 18 Gratt., 53; it may be that before the appellate court has decided the case, such petition or other proceeding for the correction of errors may be instituted in the court below, and the appellate court would suspend proceedings till the court below has decided whether any correction should be made. It does not follow because a non-resident, whose property has been attached and who has been proceeded against by order of publication, and has not been served with process or appeared, or a resident who has been served with process and permitted judgment to go against him by default, because required by statutory provisions before he can appeal, to take certain steps in the court below that he would not be bound in the same manner and to the same extent as any other appellee, if a co-defendant who has a right so to do, takes an appeal, and the appellate court renders a decision. Nor does it follow in such a case that if such appeal is taken, that the Court of Appeals should not, as in other cases, decide all the rights and responsibilities of the parties, including all the defendants, when those rights and responsibilities are so connected that the same decision must necessarily be rendered as to all the defendants. It has been repeatedly decided that a non-resident proceeded against by attachment and order of publication cannot, under our statute, take an appeal till he has appeared and petitioned for a rehearing in the court below.

*Platt v. Howland,* 10 Leigh, 507, 510; *Barbee & Co. v. Pannel et al.*; 6 Gratt., 442; *Meadows v. Justice,* 6 W. Va., 198, yet in *Lenows v. Lenow,* 8 Gratt., 352, it was held that though the absent defendant had no right by reason of the statute to appeal, not having sought his rehearing in the court below, yet a co-defendant, who had appeared, could nevertheless appeal before such rehearing had been sought, from a joint decree against him and the non-resident defendant, who had not been served with process or appeared. And that such appeal necessarily brings under review the propriety of the whole decree, and devolves upon the Court the duty of correcting and reversing it, if erroneous, in favor of both the non-resident defendant, who had not appeared, and the defendant who had. The same principle was followed in the case of *The Coal River Navigation Co. v. Webb et al.,* 3 W. Va., 438. The principles thus decided are obviously equally applicable to a judgment by default, when process has been served and in which also a rehearing must be sought in the court below, as provided for in the sixth section of chapter one hundred and thirty-four of the Code of West Virginia, before an appeal can be taken. It must follow that in such case, if there be a joint judgment against two, one by default and the other upon issue tried, that the party against whom the judgment was rendered, after the trial of the issue, has a right at once to take his appeal; and in hearing this appeal, the Court of Appeals must necessarily take under consideration the whole judgment as to both parties, and, if erroneous, reverse it as to both. And it necessarily follows that if not erroneous, it must affirm it as to both. And that when so affirmed, it cannot be again reviewed in whole or in part by the circuit court under the fifth section of chapter one hundred and thirty-four of the Code of West Virginia. The circuit court, therefore, did not err in dismissing the motion of the defendant, Newman, to correct the former judgment. The expression of the opinion

1877.
January Term.

Newman
v.
Mollohan.

by the circuit Judge that there was no error in the former judgment, was giving an opinion in a matter which was not before him for consideration. He should have dismissed the motion, because of a want of jurisdiction to entertain it. And in like manner, as the former judgment of the Court of Appeals is conclusive, and could not be reviewed or corrected, if erroneous, by the circuit court on motion, or by this Court on another appeal, the appellant's writ of error must be dismissed at his cost, as improvidently awarded.

WRIT OF ERROR DISMISSED.