# CHARLESTON.

### SHIREY v. MUSGRAVE et al.

Submitted June 28, 1886.—Decided November 20, 1886.

APPEAL.

The provision of the statute authorizing appeals to this Court in chancery causes, when there is a decree *adjudicating the principles of the case,* authorizes such appeal, only when the decree appealed from adjudicates all questions raised in the cause by pleadings or otherwise; and therefore, if a number of questions are stated in the bill, which the Court is called upon to settle, and but one of the questions is determined by the decree, and all the other questions arising in the cause are especially reserved on the face of the decree, till after a certain person is made a party defendant in the cause, such decree can not be appealed from.

Statement of the case by GREEN, JUDGE:

William Shirey at July rules, 1880, filed his bill in the Circuit Court of Lewis county against Edgar D. Musgrave, F. M. Chalfant, Calvin L. Lightburn, Levi Maxwell, William E. Arnold, Henry Brannon, Jesse Woofter, Hezekiah D. Bailey, James F. Clark, trustee, and James D. Vandervort, administrator of Christian Michell. The bill expressly or by implication sets out the following facts :—Maxwell owned a tract of land of about 326 acres in said county. The plaintiff, Shirey, owned a tract adjoining. On February 3, 1870, they united in a deed to one William G. Harrison for about ninety acres of land, of which, it may be inferred, about eighteen acres was a part of the tract belonging to Maxwell. A copy of the deed is filed with the bill; and a vendor's lien is reserved in it. On April 10, 1873, this tract of 326 acres was conveyed by Maxwell to Shirey, Maxwell receiv-

| 29 | 131 |
| 29 | 699 |
| 29 | 131 |
| 36 | 131 |
| 29 | 131 |
| 37 | 179 |
| 29 | 131 |
| 41 | 380 |
| 29 | 131 |
| 42 | 357 |
| 29 | 131 |
| 46 | 407 |
| 29 | 131 |
| e 51 | 315 |
| 29 | 131 |
| 55 | 572 |
| 29 | 131 |
| d56 | 181 |
| 29 | 131 |
| 58 | 581 |
| 29 | 131 |
| f62 | 214 |

ing the consideration for the eighteen acres, which had been included in the previous deed to Harrison, in part payment of the price to be paid for the whole tract, which was $1,739.92; and a vendor's lien was reserved to secure the purchase-money. The plaintiff alleges, that large payments have been made on this debt; but he can not say, whether or not all of it has been paid, as he does not know, whether or not subsequent purchasers from or through him, who undertook to pay off the balance, have done so; and he calls for a discovery from Maxwell. A copy of the deed from Maxwell to Shirey is filed with the bill. On March 22, 1875, the plaintiff conveyed to Bailey thirty-one acres, a part of this same tract, for $350.00, of which $50.00 was paid in cash, and the remaining $300.00 was to be paid on April 1, 1880, with interest to be paid annually. One year's interest only was paid; the balance principal and interest is still due. No vendor's lien was reserved in the deed. A copy of the deed is filed with the bill.

On April 17, 1876, Shirey sold and conveyed to Musgrave another part of the same tract for $2,985.00, of which $1,739.92 was payable in one year and has been paid; and the residue, $1,245.08, was payable in equal instalments in one, two and three years after April 10, 1877, with interest from the date of the deed, April 17, 1876, for which Musgrave executed his three notes to the plaintiff for $415.02 each with interest from date. The first two of these notes were assigned by the plaintiff for valuable consideration to Arnold and Brannon jointly. One year's interest was paid on the first of these notes and on April 19, 1877, the two sums of $328.85 and $62.12; and on the second of these notes one year's interest has been paid. These being all the payments ever made on these two notes, Arnold and Brennan sued upon them; and Musgrave confessed judgment on them for the true balance then due, $623.49, with interest from January 5, 1880. No part of this judgment has ever been paid. On the last of the three notes due on April 10, 1880, nothing but the interest to April 10, 1877, has been paid; and this note is still held by the plaintiff. A copy of the deed to Musgrave for this part of the tract of 326 acres, about 142 acres, is filed with the bill; and copies of the pur-

chase-money-notes and a copy of the confessed judgment are also filed. A vendor's lien is reserved.

On July 14, 1877, Shirey sold and conveyed to Chalfant another part of this tract, about 135 acres, which was all that was left of his portion of it. Chalfant was to pay the balance, which Shirey owed to Maxwell on the purchase of the whole tract, for which Maxwell had a vendor's lien on the whole tract, but which, plaintiff supposes, would not be a lien on the said eighteen acres included in the conveyance to Harrison. This balance, which Chalfant was to pay to Maxwell, was $1,119.92. Chalfant was further to pay $1,000.00, when he should take possession of the land, but did not do so. He took possession on October 15, 1877, and gave his note for $1,000.00 payable one day after date. This note Shirey afterwards, on January 19, 1878, assigned to Arnold & Brannon for a valuable consideration; and no part of it has been paid. The balance of the purchase-money to be paid by Chalfant to Shirey was $921.52 with interest from the date of the deed, July 14, 1877. This has been paid to the plaintiff in full. A copy of the deed for the 135 acres is filed with the bill, and a vendor's lien is reserved therein. This, as Shirey claims, bound Chalfant to pay the $1,119.92, which the plaintiff owed to Maxwell on the purchase of the whole tract of 326 acres, though Chalfant did not sign the deed but accepted it and took possession under it. Before Chalfant purchased this 135 acres of Shirey, he had purchased on March 22, 1877, of Musgrave the 142 acres, which Musgrave had purchased of Shirey, thus becoming the owner of 277 acres of the 326 acres purchased by Shirey of Maxwell. The consideration in the deed from Musgrave to Chalfant for the 142 acres was eight acres of land on Polk creek, a land-note of P. F. Linger for $875.00 with interest amounting at the date of this deed to $950.38, which Shirey alleges had been paid to Musgrave, and a note executed by Chalfant to Musgrave for $249.38 dated March 22, 1877, with interest from date, which was assigned by Musgrave to Woofter, who now owns it. A vendor's lien was reserved in this deed.

On September 18, 1878, Chalfant by a written contract sold both these parcels of land, together 277 acres, to Light-

burn at the price of $6,238.00, Lightburn agreeing to pay off the lien for the purchase-money due to Maxwell, Arnold & Brannon and the plaintiff amounting to $3,150.00 at that time, and to convey to Chalfant a one third interest in the Lightburn mill-property at the price of $3,088.00. A deed was afterwards, on September 21, 1878, made by Lightburn to Chalfant for the one third of the mill-property, and on the same day Chalfant made a deed to Lightburn for the land. A copy of this deed and a copy of the contract of sale are filed with the bill. Though this deed was not signed by Lightburn, the plaintiff claims, that by signing the contract of sale, whereby he agreed to pay these liens, and by accepting and holding the land under the deed and by virtue of the vendor's lien on said land, which provided, that he should pay off these liens according to said contract, Lightburn became the owner of said land and personally liable to pay said debts to Maxwell, to Arnold & Brannon and to the plaintiff to the extent of $3,150.00; and the said 277 acres became liable in bulk to pay the whole of said liens, so far as Lightburn can be ·heard to say, whatever may be the equities of other parties to have some of these liens put upon the 135 acres and others upon the 142 acres.

Woofter, who as assignee held the purchase-money-note executed by Chalfant to Musgrave, which is a lien on the 142 acres, sued upon it in said court ·and on January 5, 1880, obtained by confession a judgment on it for $296.95 with interest from that date and $8.50 costs. A copy of this judgment is filed with the bill. The plaintiff says, that before he sold any part of the 326 acres, which he bought from Maxwell on June 22, 1874, he gave a deed of trust on it, James T. Clark being the trustee, to secure Dennis Michel from any loss in certain transactions specified in the deed but not necessary to be stated here, and as no loss resulted to Michel, no liability has accrued or can accrue under said deed of trust. A copy of the deed of trust is filed; and it is stated, that Dennis Michel has released all but $200.00 of it. This release is not to be found in the record. It is claimed, that it should be released in full. The estate of Christian Michel was committed to the sheriff of Lewis county, J. G. Vandevort, as administrator.

The prayer of this bill is, that "the rights, equities and lia-
bilities of the parties respectively be ascertained, declared
and fixed;—that the debts due to the plaintiffs, W. E. Ar-
nold, Henry Brannon, Levi Maxwell and Jesse Woofter, be
decreed against the parties liable therefor;—that all the par-
ties have administered to them such full and complete relief,
as their rights do entitle them to have;—that the liens on
said land and the amounts and priorities thereof be ascer-
tained and fixed, and the same be enforced against said land
by a sale thereof to satisfy such liens;—and that, if any
equity of the case shall require a sale by tracts as separately
conveyed by the plaintiff, still as regards the said Lightburn
the proceeds of the sale of the whole tract of 277 acres 52
poles conveyed to him by Chalfant be held liable to satisfy
said liens of Maxwell, Arnold, Brannon and plaintiff, Shirey,
without regard to any discrimination as to particular tracts
and the liens properly applicable thereto in other respects;"
and the plaintiff asked· such other and further relief as the
court might see fit to grant.

No answers having been filed, on March 18, 1881, an order
was made referring the cause to a commissioner of the court
to ascertain and report the amount of purchase-money due
and unpaid by the defendant E. D. Musgrave on the land
conveyed to him by the plaintiff and the owner thereof; the
amount of purchase-money due Levi Maxwell on the land in
the bill mentioned, conveyed by the said Levi Maxwell to
William Shirey; the amount of purchase-money due from
the defendant, F. M. Chalfant, on the land in the bill men-
tioned, conveyed by the plaintiff to the said Chalfant, and
the owner thereof; the purchase-money due and unpaid by
the said F. M. Chalfant on the land in the bill mentioned,
conveyed to him by the said E. D. Musgrave, and the owner
thereof; the title to and the liens on the Polk creek lands
conveyed by the said Musgrave to the said Chalfant before
said conveyance; whether there is any liability on the three
hundred and thirty-three acres of land in the bill mentioned,
conveyed by the plaintiff to James T. Clark, executor of
Christian Michel, deceased, in trust, by reason of the trust
in said deed of trust; the real estate of E. D. Musgrave, on
which the judgments in the bill mentioned are liens; the

liens of the parties hereto, with their orders and priorities, together with any other matter he deems proper, or any of the parties may require.

On July 9, 1881, Musgrave filed his answer, in which among other things he says, that, when he purchased the 142 acres, there was a vendor's lien on the entire tract due from Shirey to Maxwell for a note of $1,739.92, and he gave as part of the purchase-money to Shirey, of whom he purchased, a note for the same amount intended to satisfy the whole of Maxwell's claim; that this note was transferred to Maxwell; and that he paid off the whole amount of this $1,739.92 in full discharge of the lien on the land for purchase-money due from Shirey to Maxwell, which discharged the lien and entitled Musgrave to his note to Shirey for the same amount; but it had to be re-transferred by Maxwell to Shirey; and that Maxwell's vendor's lien for this $1,739.92 and interest can not be revived except for the benefit of Musgrave, who stands substituted to all the rights and equities of Maxwell thereto. He still further claims, that he has paid off in full $1,245.08, the balance of the purchase-money originally due from him to the plaintiff for this 142 acres of land; that, to do this, he on the 18th of April, 1877, transferred to the plaintiff a draft of Joseph E. Sands, cashier of the First National Bank of Fairmont, on the cashier of the First National Bank of Wheeling for $900.00, and P. F. Lingers's note to F. M. Chalfant due October 15, 1877, for $875.00, with interest from October 15, 1875, amounting principal and interest to $952.38, for which he took receipts; but that these as well as the note for $1,739.92, which he took up, have been lost;—that these transfers overpaid all that he owed on the purchase money, and that the balance was to be repaid to him, when P. F. Lingers's note should be collected; that all of this was fully expressed in the receipt, which he took from plaintiff, and which he has lost.

Shirey soon after emigrated West and left his business in the hands of George W. Dean, his attorney in fact, and also left this note of Lingers's for collection, when it should fall due. Musgrave supposing he had settled every thing with the plaintiff was about January 5, 1880, surprised to learn from Dean, that by order of the plaintiff his two notes for

the purchase-money of this land, each for $415.03, had been sold to Arnold & Brannon. He then went to see Arnold as his counsel to advise with him, and being misadvised and misled by him he confessed the judgment for $623.49 named in the bill as the amount due on said notes, when not a cent was due, and all the purchase-money and more had been paid. He claims, that, if he be held bound by a judgment confessed under such circumstances, whatever estate of the plaintiff's there may be in this State ought first to be applied to its payment; and that Arnold & Brannon ought to be compelled to look to the estate of the plaintiff in this State before seeking to enforce it against him, Musgrave. He also claims a lien on the 142 acres of land, which he conveyed to Chalfant, named in the bill. He further states in this answer the origin and character of this lien; but it is deemed unnecessary to repeat them here. The court on the filing of this answer referred the cause to a commissioner to ascertain and report touching the payments, which Musgrave claimed to have made, and the balance, if any, due from Musgrave to Shirey.

Commissioner Simpson on the first order of reference reported, that there was due from Shirey to Maxwell as of May 18, 1881, $1,232.63, which was the first lien on the entire tract of 326 acres;—that at the same date there was due from Musgrave to Arnold & Brannon the purchase-money for the 142 acres, $667.63, secured by a vendor's lien, which sum was $26.55 less than the confessed judgment of January 5, 1880;—that there was due to Shirey on the last of said purchase-money-notes executed to Shirey by Musgrave and secured by a vendor's lien $517.29;—that the note for $1,000.00 given by Chalfant as a part of the purchase-money for the 135 acres also secured by a vendor's lien was then owned by Lightburn and amounted as of said date, May 18, 1881, to $1,215.50;—that the difference between this note and the confessed judgment to Shirey for the use of Arnold & Brannon was $34.13;—that this debt was owned by Lightburn;—that the other two payments secured by vendor's lien on the sale of this 135 acres by Shirey to Chalfant amount as of same date to $2,335.60;—that the notes for these last payments had been assigned to Lightburn;—that the amount

due from Bailey to Shirey as of same date was $381.43, for which no vendor's lien had been retained;—and that there is no liability on this land because of the deed of trust executed by Shirey to Clarke, trustee. This is a brief statement of the substance of this report. Musgrave excepted to it, because it found, that there was $517 25 due from him to Shirey, whereas nothing was due as shown by the evidence.

McGary, commissioner, made a report under the second order of reference, that he considers, Musgrave has been allowed in Simpson's report all the credits, that he is entitled to. Simpson reported the first payment of $1,739.92 due from Musgrave to Shirey as paid but did not report how. Commissioner McGary considers, that it was paid by the application for that purpose of the money received on the Linger note the draft of $900.00 given by Sands cashier and cash, as shown by the endorsements. His conclusion is, that Simpson's report correctly represents the indebtedness of Musgrave to Shirey and his assignees, Arnold & Brannon. Musgrave excepted to this report, because the depositions and proofs show, that he owed neither Shirey nor his assignees, Arnold & Brannon, anything on the 142 acres.

No action having been taken on these reports, a special judge on July 3, 1882, made another order of reference to commissioner McGary to report the liens on the respective properties in the bill and proceedings mentioned, the amount and character of each and their priorities. On October 27, 1882, he reported, that he approved of the prior report by Simpson. Musgrave excepted to this report for reasons set out in the exception to Simpson's report and for other reasons, among them, that no weight was given to highly important evidence introduced since Simpson's report was made. Twenty-eight depositions were taken in the progress of this cause; but I deem it unnecessary to state their contents. On July 2, 1883, the following decree was rendered by A. B. Fleming, the regular judge of the 2nd judicial circuit:—

"This cause came on this day to be heard upon the papers heretofore read, orders and decrees heretofore made in this cause, and the cause of A. F. Welham & Bro. *vs.* E. D. Musgrave and others, upon the three several reports made by

commissioners under such decrees, all filed with the papers, one made by commissioner R. J. Simpson and the remaining two by commissioner W. B. McGary, upon the answer of defendant, Edgar D. Musgrave, and general replication thereto, exhibits and depositions, exhibits and depositions filed with said reports, and all others taken and filed before and since the filing of said reports, upon the admission of the plaintiff and defendant E. D. Musgrave that the deposition of P. F. Linger, should read, that he paid the money in the fall of 1878 instead of in 1879, as recorded in his deposition, and upon their withdrawal of all the exceptions taken to or endorsed upon the deposition filed, and agreement that the depositions should be read as if not excepted to, and the court heard the arguments of counsel. On consideration whereof, the court is of opinion that the proceeds of the Linger note assigned as collateral on April 19th, 1877, by E. D. Musgrave to the plaintiff, and paid by said Linger about the 7th of September, 1878, paid all of the balance of the purchase money due from the defendant E. D. Musgrave, except the sum of seven dollars and sixteen cents as of said last named date, which, with interest to this day, amounts to the sum of $9.21 cents, which should be paid the defendants Wm. E. Arnold and Henry Brannon on the portion thereof assigned by the plaintiff to them. It is therefore adjudged, ordered and decreed that Edgar D. Musgrave pay to said William E. Arnold and Henry Brannon the sum of nine dollars and twenty-one cents, with interest thereon from this the 2d day of July, 1883, until paid. The court being of opinion that before a decree can be entered ascertaining the liens and their priorities on the several parcels of land in the bill and proceedings described, B. F. Lightburn, who seems to be the holder by assignment of a portion of the liens reported by commissioner, should be made a party, no further decree touching the rights of the parties is made, and all questions not herein adjudicated are reserved for future determination, except as to costs; and the court especially reserves all questions touching the rights of said William E. Arnold and Henry Brannon as to any rights they may have to enforce the balance of their judgment against said Edgar D. Musgrave and touching their rights to recover against

their assignor, the plaintiff. It is further adjudged, ordered and decreed that the plaintiff and defendant Edgar D. Musgrave each pay their own costs to and including the costs incurred at the present term."

From this decree Arnold & Brannon and William Shirey have obtained an appeal from a judge of this Court.

*W. E. Arnold* for appellants.

*J. B. Sommerville* for appellees.

GREEN, JUDGE :

Counsel have argued this case only on its merits, no question as to our jurisdiction having been raised. But it is our duty, unless the record shows affirmatively, that we have jurisdiction, to decline to consider the same, whether the parties desire or do not desire us to consider the case on its merits. If we should consider it, the parties might be bound by our decision (*Henry* v. *Davis*, 13 W. Va. 231, pt. 6 of Syll.; *Newman* v. *Mollohan*, 10 W. Va. 488); but this would result from the conclusive presumption, that the Court before taking jurisdiction of a case is satisfied, that the case is one, in which the Court has jurisdiction; and the Court having so decided in effect, this decision like any other decision of this Court is final and conclusive. The most formal consent of parties can give us no right to assume jurisdiction not conferred on us by law. Unless under the law we have jurisdiction in this case, to assume it would be most mischievous as well as wrongful; for, if we have no jurisdiction and yet assume it, we shall be bound to assume jurisdiction in all like cases even against the protest of the appellee. Thus the parties to this cause would be in effect making a law binding on all suitors in the State ; and, as other parties to other suits might change or enlarge our appellate jurisdiction at their pleasure, the result would be to entirely unsettle the law as to what is an appealable decree. This would be exceedingly mischievous. Statute-law as interpreted by this Court, provides that no appeal can be taken after the expiration of two years from the date of the rendition of the decree, where the same has been rendered since March 27, 1882; nor can such a decree be reviewed by

this Court, though an appeal should be taken from a subsequent decree based on it. If on the other hand an appeal be taken from a decree, which is not appealable, such appeal must be dismissed by this Court as improvidently granted. It is therefore very important, that the legal profession should understand, what decrees are appealable. If we should assume decrees to be appealable without due consideration, or because the parties to the suit might acquiesce in our so doing, the law would soon become so unsettled, that no lawyer could advise a client, whether any decree, which he might complain of, was appealable or not, though it might be most important to his client to receive such advice.

Prior to the Code of Virginia of 1849 there was often much difficulty in determining, whether a decree was or was not appealable, as at that time only final decrees were appealable. There was great difficulty in settling upon any rule of easy application, whereby it could be determined in the almost infinite variety of decrees, whether a particular decree was or was not a final decree. The difficulty is well illustrated by the discordant views of the judges in *Cocke* v. *Gilpin,* 1 Rob. 20. And the great difficulty of the subject and the diversity of opinion thereon can be learned by examining the nineteen Virginia causes referred to in *Manion* v. *Fahy,* 11 W. Va. 493. In the code of 1849 it was provided that "a person who is a party to any case in chancery, wherein there is a decree or order dissolving an injunction or requiring money to be paid or the possession or title of property to be changed or *adjudicating the principles of the cause,* may present a petition for an appeal from the decree or order " with certain specified exceptions. (See also Code of Va. of 1860, chapter 182, sec. 2, p. 745.)

The provisions for allowing appeals to decrees *adjudicating the principles of the cause* first appear in the Code of 1849. The principal object of this provision was, it seems to me, to make it less difficult to determine, whether a particular decree was or was not appealable, the law prior to that showing, that, when the right to appeal from a decree existed, only because the decree was a *final* decree, it was very often difficult to determine, whether or no the particular decree

was final. It was supposed, that it would be less difficult to determine, when a decree "*adjudicated the principles of the cause,*" than it was to determine, when the decree was final. The new phraseology might incidentally enlarge the jurisdiction of the Supreme Court somewhat; but that was not the object of the legislature. The object was to remove, as far as it was possible to do so, the difficulty of determining what were appealable decrees ; and, it seems to me, they accomplished their object, though, I presume, they did not remove all difficulty from the subject. It may yet be a question, whether a particular decree does or does not *settle the principles of the cause.* Thus under this provision of the Code of 1849, which is the same as that above quoted from the Code of 1860, in the case of *B. & O. Railroad Co.* v. *Wheeling,* 13 Gratt. 40, pt. 2 of Syll. and pp. 57–60, the Court reached the conclusion, that "an order overruling a motion to dissolve an injunction may be appealed from, if the principles of the cause are thereby adjudicated ; and this, though such order is made in vacation."—It is evident from the opinion, that whether or not an order overruling a motion to dissolve an injunction would be an appealable order, would depend upon what might be the character of the particular case ; and of course in some cases there would be a difference of opinion, as to whether such order did or did not *adjudicate the principles of the cause.* This provision of the Code of 1849 has ever since been a part of the statute-law both of Virginia and of West Virginia.

Our law touching this subject is to be found in Am. Code W. Va. (Warth) p. 745, chap. 135, sec . 1, ¶ 7 as follows:— "In any case in chancery, wherein there is a decree or order dissolving or refusing to dissolve an injunction or requiring money to be paid or real estate to be sold or the possession or title of property to be changed or *adjudicating the principles of a cause,*" a party to it may obtain an appeal. It will be observed, that every decree refusing to dissolve an injunction is under this provision appealable. This provision was inserted in our law, doubtless because the decision in Grattan above cited rendered such an order in some cases appealable and in other cases not, and because the legislature considered it to be desirable, that there should be as

little uncertainty as possible on this question. So far as de-
crees dissolving or refusing to dissolve injunctions are con-
cerned all doubt is removed by our statute, as it does not
leave this to be determined by considering, whether such
a decree in a particular case *settles* the principles of the
cause.

Let us now consider what interpretation we should give to
the words in our statute quoted above: "A decree *adjudi-
cating the principles of a cause.*" To interpret this phrase
correctly, it is important, that we should have a correct view
of the policy with reference to appeals, which had always
prevailed in Virginia up to the time, when these words were
introduced into the statute-law of that State. The policy of
Virginia was thus stated by Judge Baldwin in *Cocke* v. *Gil-
pin*, 1 Rob. 34:—"The result of our legislative policy on this
subject has been, that as a general rule the jurisdiction of
the supreme appellate tribunal does not begin, until that
of the inferior court has terminated; then an appeal prop-
erly allowed brings into discussion before the appellate
court all the previous proceedings in the cause; and that
pending an appeal the further cognizance and proceedings of
the court below are suspended in relation to any question
involved in the cause, so far as its merits are concerned. In
these respects we have departed from the rules of English
chancery. There the decisions of the Chancellor, which set-
tle principles or give relief to any extent, may be brought at
once before the House of Lords, if the decree or order has been
enrolled: then the discussion in the appellate forum is con-
fined to the decree or order appealed from and can not be
extended to any previous proceeding, however much the jus-
tice of the case may require it, without a formal extension
of the appeal (2 Smith Ch'y Pr. 41; *Bucher* v. *Dillon*, 5
Bligh 714); and then the appeal does not suspend proceed-
ings upon the decree without a special order, which is rarely
granted [2 Smith Ch'y Pr. 68, 69; *Willan* v. *Willan*, 16 Ves.
216; *Walburn* v. *Ingolby*, 1 Myl. & K. 61, (6 Cond. Eng.
Ch'y 498)]." This difference between the English law and
our law and the reasons, upon which it is based, are fully ex-
plained in *Manion* v. *Fahy*, 11 W. Va. 490.

Was this introdection into the Virginia Code of 1849 of

this provision, which is still the law of Virginia and of this State, designed to change the policy, which we had always pursued, and to adopt the English policy as given above? It seems to me most obvious, that such was not the object of this change in our law. Its main object was to render more certain, what were *appealable* decrees, not to extend them *indefinitely*. If, whenever any principle involved in a cause was determined, the decree determining it was appealable, as is the case in the English practice, the effect in this State would be to greatly increase the cost of litigation and to greatly prolong controversies and to impose upon this Court a sort of supervision of all the Circuit Courts during the progress of all chancery suits, which would quickly so overburden it with business, that it could not discharge its duties. But I am entirely satisfied, that this was not the object of the change in the law made in the Code of 1849. If such had been the purpose of the legislature, the language used would have been far different. Instead of the words—"a party to any cause in chancery, whenever there is a decree or order adjudicating the *principles of the cause*, may appeal," something like the following would have been used:—An appeal will lie from any interlocutory order in a chancery cause adjudicating any principle involved in it. —The meaning of the words "adjudicating the principles of the cause" is adjudicating all the principles of the cause. When the words are so interpreted, the long established policy of the State is left undisturbed; and appeals still lie generally only after all controversies have been decided in the inferior court. The change made in our law was not intended to overthrow our established policy, but, if possible, to make more clear, what decrees are appealable, still leaving except in a few specified cases the jurisdiction with the inferior court, till it had disposed of *all* the principles involved in the cause. This has been our construction of our law.

In *Camden* v. *Haymond*, 9 W. Va. 680, this Court decided to be not appealable a personal decree of the Circuit Court of Harrison county against the defendants, which declared, that a debt of $10,307.52 not payable till a future time was owing from the defendants and was a lien on a certain tract of land

of one of the defendants, and which reserved a right to the plaintiff to make application for, as this Court interprets the decree, a personal decree for this $10,307.52, when it should become due, against the defendants, because this decree on its face showed, that the court had not done all it intended to do in the cause; and, as the future action was to be taken not simply to carry into execution the lien, which, the court had decided, existed, but to give the parties such personal decree, which would of course have been resisted, it thus appeared on the face of the decree, that all matters in controversy were not by it finally disposed of, and therefore, as it did not settle all the principles of the cause, it could not be appealed from.

In the case of *Laidley* v. *Kline*, 21 W. Va. 21, this Court decided, that, when an account had been settled before a commissioner, and various exceptions had been filed to the report, and the court by its decree had sustained some of these exceptions and overruled others, such decree is not an appealable decree, though it might have settled the rights of some of the parties or *quasi* parties to the cause.

In *Hill* v. *Als*, 27 W. Va. 215, this Court decided, that "When the record in a cause shows, that the pleadings present two or more controversies between the plaintiff and different defendants, only one of which was passed upon by the Circuit Court, and the other was left undecided, this Court will dismiss the appeal as improvidently awarded." In that case this Court expressly held:—"The provision of the statute authorizing appeals to this Court in chancery causes, when there is a decree '*adjudicating the principles of the cause*,' authorizes such appeal, only when the decree appealed from adjudicates *all* the controversies between the parties raised by the pleadings or otherwise."

When this law as thus expounded is applied to the case before us, it is perfectly obvious, that the decree of July 2, 1883, appealed from is not an appealable decree. The bill, as appears from the statement of its contents, which I have made, has three principal objects in view besides a number of others not deemed so important by the plaintiff. These three objects were the enforcement of a vendor's lien on a tract of land of 142 acres sold to Musgrave, the enforcement

of another vendor's lien on 135 acres sold to Chalfant and the ascertainment of the amount of a vendor's lien due to Maxwell from the plaintiff, who had bought both of these tracts of Maxwell. By two commissioner's reports it was stated, that a vendor's lien on both these tracts, which was the first lien on them, amounted on May 18, 1881, to $1,232.63, though defendant Musgrave in his answer insists, that nothing was due to Maxwell; and the reports, while not denying, that something might be due, seem to imply, that it would probably prove to be but little. These commissioners' reports stated, that there was due from Musgrave on the 142 acres as of the 18th of May, 1881, $1,211.37, of which $624.08 was due to Arnold & Brannon and $517.27 to Shirey, which sums were a lien on the 142 acres subject to the prior lien of $1,232.63 ; and finally the reports stated, that there was due from Chalfant, for which there was a vendor's lien on the 135 acres subject also to Maxwell's prior lien as of the same date, $2,335.60. This last is reported by the commissioners as belonging now to P. F. Lightburn as the assignee and sub-assignee of Shirey. He it is presumed, had these liens assigned to him after the institution of the suit, as he is not mentioned in the bill or made a party to the cause. The decree appealed from ascertains, that the balance of the purchase-money due from Musgrave for the 142 acres is $9.21 instead of $1,211.37 as the commissioners reported, and that it was due to Arnold & Brannon; and a personal decree against Musgrave for that sum with interest from July 2, 1883, is rendered in their favor, the plaintiff and Musgrave being each required to pay his own costs. This is the whole of the decree, the court having declined to act upon said commissioners' reports, till B. F. Lightburn was made a party, or "to make any further decree touching the rights of the parties ;" and all questions but this one adjudicated " are reserved for future determination, and the court especially reserves all questions touching the rights of Arnold & Brannon as to any right they may have to enforce the balance of this judgment against Musgrave and to recover against their assignor, the plaintiff."

It is only necessary to understand the objects of this suit and the matters, which it called upon the court to deter-

mine, to see, that among the questions reserved by the court in this final decree for its future determination are some of the most important principles in the cause; and of course this decree of July 2, 1883, is not appealable; and this appeal must be dismissed as improvidently awarded; and the appellants must pay to the appellees their costs in this Court expended.

APPEAL DISMISSED.