# CHARLESTON.

## Kearfott v. Dandridge et al.

Submitted Sept. 12, 1898—Decided Dec. 14, 1898.

1. DECREE—*Finality of Decree—Statute of Limitations—Appeal.*

    A decree providing for the distribution and payment of money is a final decree, and subject to the statute of limitations relating to appeals, bills of review, and motions to correct nonappealable errors. (p. 676).

2. EQUITY—*Decree—Distribution of Funds.*

    If a court of equity takes charge of a large fund brought into a chancery cause, and enters a general decree providing for the proportionate distribution of such fund among the distributees entitled thereto, and in subsequent and intermediate decrees relating to portions of such fund it apparently departs from such apportionment, in its final distribution of the residue of such fund it should so equalize the same as to make such final decree, including all intermediate decrees, conform to the general decree. (p.679).

3. EQUITY—*Distribution of Funds—Distributee's Rights.*

    If one of a number of distributees purchases a portion of the property subject to such fund in such suit, she is entitled to have her distributive share applied as a credit on her purchase money notes in the final distribution of the fund, and the court may make such application without her consent. (p. 678).

Appeal from Circuit Court, Jefferson County.

Bill by John P. Kearfott, trustee, against A. S. Dandridge and others. A decree was rendered, from which Serena C. Dandridge appeals.

*Reversed.*

McDonald & Beckwith, for appellant.

Joseph Trapnell, for appellee.

DENT, JUDGE:

In the case of John P. Kearfoot, trustee, against A. S Dandridge and others, from the circuit court of Jefferson County, Serena C. Dandridge, appellant, presents some intricate questions of law relating to the management, control, and distribution of the fund brought into said cause, and of which she was one of the distributees. By a general decree, which is not made a part of the record, the circuit court settled the principles of the cause, determined the rights of the distributees, and fixed the basis on which the fund thereafter to be brought under the control of the court by the sale of certain lands was to be apportioned among them. From time to time certain several creditors of the several distributees, in addition to the creditors originally made parties to the suit, filed their *ex parte* petitions, and, together with all other lienors, were allowed their debts against the several distributive shares liable thereto. The lands were sold, and from time to time intermediate decrees were entered disposing of the fund as it accumulated. The appellant became a purchaser of one of the tracts of land sold, pa'·i the down payment, and executed her notes for the res ·!ue of the purchase money. When she was finally called on to pay her last purchase-money note, never having received her distributive share of such fund, she filed her petition, asking that the same might be applied in satisfaction of such note according to the original decree of apportionment. The circuit court refused to grant her prayer for the reason, as stated in the decree, "that there are no errors apparent in the said decrees of November 18, i3ʋ6, and February 24, 1897, or any of the former decrees, v hich it is in the power of the court to correct;" and a decree was rendered requiring her to pay the balance on the purchase money without giving her credit for her distributive share, which, according to the report of Commissioner Brown, deducting therefrom wrongful costs imposed upon her, was more than sufficient to satisfy such balance of purchase money. This presents the anomalous case of the court of chancery, if Commissiouer Brown's report be true, taking charge of a fund, and so distributing it from time to time, by its in-

termediate decrees, in such manner as to defraud one of the distributees. All the decrees are not before the Court, but only such as the appellant deemed proper, so the Court is deprived of information it should have, contained in those missing decrees. The principal matter of contention, however, in the circuit court, was over the decree entered December 12, 1889, which is as follows: "This cause came on again this 12th day of December, 1889, to be further heard upon the papers formerly read, and the reports of Special Commissioner Blackburn Hughes,—one filed November 28, 1888; also the one filed March, 1889; and the other this day filed by leave of the court,—showing the collection of the balance of purchase money due by the purchasers, Joseph Fiscus, Mrs. Isabella L. Dandridge, and John Burns, amounting to $1,543.98; and upon the report of Commissioner Cleon Moore returned and filed November 12, 1889, ascertaining the distribution of the fund heretofore collected and disbursed; and the report of said Commissioner Moore returned at this term, apportioning the fund in the hands of special commissioner; and was argued by counsel; and, there being no exception to said report, the court doth affirm the same, and doth adjudge, order and decree that said Special Commissioner Hughes, after deducting his commissions of $65.31, and retaining $20 for unpaid costs of suit, etc., $5 for writing deed to purchaser, do distribute the balance in his hands as follows: Taxes, $79; to Miss Sarah P. Dandridge, $200; Serena Dandridge, $122; to surveyor's fees, $21; to commissioner's fee, $4.50; to Collin C. Porter's executors, $53.79, balance of debt, which is a lien upon the interest in the fund of said Sarah P. and Serena C. Dandridge; and to Joseph Trapnell, attorney of Houser & Drawbaugh, $969.35, on account of the debt audited in favor of said H. and D., which is a lien upon the interest of Lemuel P. Dandridge in the fund; leaving a balance of $3.93 in the special commissioner's hands; and make report to the next term. Said special commissioner is also directed to deliver a deed to John Burns, the purchaser, who has paid in full as above recited, reserving through his land the road from the land sold Serena C. Dandridge. Upon motion of Flick & Westenhaver, attorneys

for some of the creditors, it is further adjudged, ordered, and decreed that a rule be issued, returnable to the first day of the next term of this court, against Serena C. Dandridge, the purchaser of the 307-acre tract, to show cause why said real estate shall not be resold to pay the two deferred payments of purchase money due from her thereon."

The appellee contends that this is a final decree, and has passed beyond the power of the court as to the disposition of the fund thereby made. A decree for the payment of money is a final decree, and is conclusive as to the questions thereby determined. Code 1891, c. 135, s. 1, cl. 7; *Core* v. *Strickler*, 24 W. Va, 689. The decree itself must show its conclusiveness.

As to the sum of money brought into court by its commissioner, and the payment and distribution thereof to the various parties named, it is final and conclusive; but as to the basis of distribution it is not, for it does not pretend to settle this question, already determined by a former decree of the court. The apparent distribution of the fund is not made in accordance with said decree, but according to some equitable basis presented to the court by the commissioner. This report being lost, it is impossible for the court to say what it was, but it is compelled to accept the decree as it finds it. By the decree, Sarah P. Dandridge is allowed two hundred dollars, Serena C. Dandridge one hundred and twenty-two dollars, and fifty-three dollars and seventy-nine cents balance on debt of Colin C. Porter, paid for their benefit, and Lemuel P. Dandridge nine hundred sixty-nine dollars and thirty-five cents to be paid on the debt of Houser & Drawbaugh. These sums, if allowed as distributive shares, are entirely variant to the apportionment provided in the original decree, and the court must have departed therefrom for some reason apparent to itself, with the intention of equalizing it in future management of the fund. According to the original decree, appellant was entitled to a little less than one-sixth, while Lemuel P. Dandridge was entitled to a little less than twice as much as appellant, yet by this decree he is allowed over six times as much; showing plainly that the court, for some reason, was not following the original apportionment. It may

have been from the reason that she had not paid her pur-
chase money notes, and that she would be allowed her due
proportion out of them as a credit thereon.   If the origi-
nal apportionment had been carried out after two of the
distributees had received their portion, and dropped out
of the distribution, as it appears they early did do, by the
absorption of their shares in the payment of their debts,
the fund should have been divided, one-fourth to appellant,
one-fourth to Sarah P. Dandridge, and two-fourths to L.
P. Dandridge.   This one hundred and twenty-two dollars
may have been some charge or debt allowed her as against
the other distributees, to be credited on her notes, about
which, however, it is useless to conjecture in the absence
of proof.   The decree shows she was to receive one hun-
dred and twenty-two dollars out of this fund, and to this
extent it is final and conclusive.   She denies its receipt by
her, and presumptively it was not paid, but, in accordance
with the rules of equity, was retained by the commissioner
as a credit on her notes held by him, and is still among his
effects or was paid out by him for the benefit of the other
distributees unless since his death it has been received by
his successor.

On the 19th day of December, 1890, the court entered
the following decree: "This cause came on again this 19th
day of December, 1890, to be further heard upon the pa-
pers formerly read, and was argued by counsel; and it
being suggested to the Court that Special Commissioner
Blackburn Hughes has departed this life since the rendi-
tion of the last decree of December 12, 1889, in the cause,
it is adjudged, ordered, and decreed that Joseph Trapnell
be, and he is hereby, appointed special commissioner in
the stead of the said Blackburn Hughes, deceased, with
instructions to demand and receive from the personal rep-
resentative of the said Hughes any balance remaining in
his hands under the said decree of December 12, 1889, and
the bonds on the deferred payments on the parcel of land
purchased by Serena C. Dandridge; but, before receiving
any money hereunder, said special commissioner will ex-
ecute a bond before the clerk, with security to be approved
by him, in the penalty of $2,000.   It is further adjudged,
ordered, and decreed that a rule issue, returnable to the

first day of the next term, against the said Serena C. Dandridge, the purchaser of the said tract of 307 acres, in the proceedings mentioned, to show cause why the said real estate shall not be resold to pay the two deferred payments of purchase money due from her thereon."

By this decree said commissioner was authorized to receive from the personal representative of his predecessor said one hundred and twenty-two dollars, if still in his hands to credit of the fund.   The appellant could not enforce its payment while her purchase-money notes remained unpaid. This is a matter of judicial inquiry for the court.   If this sum, with or without the consent of the appellant, was retained in the hands of Special Commissioner Hughes as a credit on her notes, it became a part of the funds of the suit, which his successor had the right to demand and receive under the order of the court, and she would be entitled to credit therefor.   Whatever the determination as to this fund may be, the decree of the 12th of December, 1889, does not bar or in any way prevent appellant from demanding and having assigned to her, as a credit on her purchase money, her rightful apportionment of the whole fund on the original basis fixed after the payment of the debts with which her share was charged.   The various decrees entered in the case must show this, without resort to any of the reports made by the different commissioners, for no funds brought into the cause could be paid out without a proper decree therefor.   The decrees must show the amount applied to the benefit of each of the distributees, and therefore which of them have received their full shares, and which of them are entitled to the residue of the funds arising from appellant's purchase and still under the control of the court.   Sarah P. Dandridge, afterwards Hughes, has never received her just apportionment of the fund, so far as the decrees show; yet a creditor of L. P. Dandridge, one of the distributees, is permitted to take the whole balance of the fund, without, any consideration of the rights of the two unpaid distributees.   The creditors of the other distributees have no right to subject the share of the appellant to the payment of their debts, but her right to the fund in controversy for the satisfaction of her distributive share is entitled to priority,

by reason of the original decree settling the principles of the cause, to which all the subsequent decrees, being merely in extension of the principles therein settled, must as a whole, be made to conform by the decree entered as a finality. Such being the case, the circuit court was called upon to review the former decrees as a basis, and the intermediate decrees as evidence of what had been done in pursuance thereof, to so equalize the distribution of the balance of the fund as to carry out the rightful apportionment provided for in the beginning. This is equity, and this is what this appellant had the right to demand. It is a mere matter of statement and calculation from the various decrees, and does not need the assistance of the lost reports. Out of a certain fund she and others are to receive certain proportions. She has never received anything except certain sums applied on her liabilities by the court, and now it is claimed there is nothing due her. This, if true, the decrees should show ; otherwise she is entitled to such proportion of her share as they fail to show was applied for her benefit. The real question in dispute is whether the fund in controversy belongs to the distributive share of L. P. Dandridge, Serena C. Dandridge, or the estate of Sarah P. Hughes, deceased. If his creditors have already received L. P. Dandridge's full share, they are entitled to no more, although their debts remain unpaid. The decrees are the best evdivence of this, as well as to all the other distributees, and the court should be able to trace the full disposition of the fund from them, so as to arrive at a correct conclusion and disposition of this case.

Appellant's petition fails to make necessary parties thereto all parties claimants to such fund, and should be amended in this respect. *Railroad Co.* v. *Vanderwerker*, 33 W. Va. 191, (10 S. E. 289); *Marshall's Ex'r* v. *Hall*, 42 W. Va. 641, (26 S. E. 300).

The decree of the 9th day of March, 1898, is reversed, at the costs of Craven Trussel's executor, representing the distributive share of L. P. Dandridge and the cause is remanded to the circuit court for further proceedings according to the rules of equity.

*Reversed.*