# CHARLESTON.

KERFOOT, TRUSTEE *v.* DANDRIDGE *et al.*

Submitted September 10, 1910.    Decided May 9, 1911.

APPEAL AND ERROR—*Review—Interlocutory Decree—Final Appeal.*
    A decree, prematurely entered, pending exceptions to a commissioner's report undisposed of, and which does not finally adjudicate the controversies between the parties to the cause is interlocutory, and not appealable, and a subsequent decree disposing of such exceptions, and finally adjudicating all matters in controversy, brings with it, for review on appeal, all errors in the former decree. (p. 342).

Appeal from Circuit Court, Jefferson County.
Appeal by John P. Kerfoot, as trustee, against A. S. Dand-

ridge and others.   Decree for plaintiff, and Hugh A. White, executor, and others, appeal.

· *Affirmed.*

*Brown & Brown* and *Beckwith & Bushong,* for appellants.

*Beltzhoover & Beltzhoover,* for appellees, devisees of Craven Trussell.

MILLER, JUDGE:

This is a second appeal in this cause; the first was by Serena C. Dandridge, from a decree of March 9, 1898; opinion reported in 45 W. Va. 673. The present appeal is by Hugh S. White, executor of Blackburn Hughes, deceased, and J. W. Gardner, committee, administrator of said Serena C. Dandridge, deceased, from a decree of October 29, 1907.

The decree now before us brought the cause on for hearing on the reports and supplemental report of the commissioner, to whom the cause had been referred, to state and settle the accounts in accordance with the decree and mandate of this Court on the former appeal. Sundry exceptions to said reports, by Craven Trussell's executor, were sustained, because of errors therein, and because said reports, in the opinion of the court, did not "trace the full disposition of the fund so as to enable the court to arrive at a correct conclusion and disposition of the case." Without, however, recommitting the cause to the commissioner, the court, of its own motion, adopted and filed, in lieu of a report by a commissioner, a "Detailed Statement", made by counsel for the heirs at law of said Craven Trussell, deceased. Finding from this statement that there was due Sarah P. Hughes, deceased, the sum of seven hundred and twenty-eight dollars and twenty-nine cents, and that said Serena C. Dandridge, to whom, by decree of May 18, 1901, the last distribution had been made, had been overpaid seven hundred and five dollars, it was decreed that Hugh S. White, executor of Blackburn Hughes, deceased, sole distributee of said Sarah P. Hughes, deceased, recover of J. W. Gardner, sheriff, committee, and administrator of said Serena C. Dandridge, deceased, the sum so overpaid her, to be credited on the sum so found due said Sarah P. Hughes, leaving a balance due her of ninety three dollars and twenty-nine cents, and that said White, ex-

ecutor, should recover from each of the five several heirs of said Craven Trussell, deceased, to whose executors, by decree of December 2, 1903, the last preceding distribution had been made, the sum of eighteen dollars and sixty-six cents, to make up said balance.

The first point of error relied on by counsel for the estate of Serena C. Dandridge is, that the decree appealed from deprives that estate of the benefits of a decree adjudicating the rights of decedent, of May 28, 1901. The latter decree, although it brought the cause on to be heard on the reports of said Green, commissioner, and the several exceptions thereto, sustained by the decree now before us, in terms reserved the questions presented by said exceptions; but finding "from the orders entered in the cause and from the reports of the special commissioner of sale, showing the amount of moneys that have come into the cause," that there was due said Serena C. Dandridge "from the 'fund in the cause an amount greatly in excess of her purchase money bond", then held by special commissioner Trapnell, dated October 13, 1891, for seven hundred and ninety-three dollars and ninety-four cents, it was thereby decreed, that said special commissioner "do cancel said bond, and deliver the same," to her or her attorneys, and that he also "execute and deliver" to her "a deed for the land purchased by her in this cause."

By the same decree the cause was "again referred to commissioner T. C. Green", and who was directed thereby to report: First, the amount due Hugh S. White, executor of Blackburn Hughes, deceased, sole distributee of said Sarah P. Hughes, deceased, after charging her interest with all debts chargeable thereto; second, the amount of the payments, with interest on the same, on account of the interest of A. S. Dandridge, Jr., and L. P. Dandridge, in excess of their share, and to whom such excessive payments were made; stating further such other matters as he might deem pertinent, or that any party should require.

That decree of May 28, 1901, was never appealed from. Was it final or appealable as to the matters adjudicated against the estate of Serena C. Dandridge, in the decree now before us? If so, the latter decree is erroneous, and should be reversed. That decree did find, not upon the reports of com-

missioner Green, and the pending exceptions thereto, but "from orders entered" and "reports of the special commissioner of sale" that there was then due Miss Dandridge from the fund in the cause an amount greatly in excess of her purchase money bond, and ordered her bond cancelled and surrendered to her, and that a deed be made to her by the special commissioner. But the court did not find what amount was due her as distributee, nor undertake to finally adjust and settle the accounts between the distributees and creditors, and to which the exceptions to the reports of commissioner Green related. Some of these exceptions related particularly to errors and omissions in the account of Serena C. Dandridge, affecting seriously the rights of other distributees. True the decree does direct cancellation of her bond, and that a deed be made, but it recommits the cause to the commissioner, assuming perhaps, that after crediting her with her distributive share, and deducting debts for which she was liable, a balance would be due her as distributee. The sale to her had already been confirmed, and on payment of all purchase money she was entitled to cancellation and surrender of her bond, and to a deed; but it appears from the decree that she in fact paid nothing on the bond cancelled, unless the court rightfully determined that she was entitled as distributee to an amount in excess of her bond. Whether she was or not, and how much, was a question, in part at least, left undecided by the decree. Besides the record then showed that all, or practically all, of the money had been distributed, except the balance due from Miss Dandridge on her bond, and that on a proper adjustment of the accounts between distributees a very considerable sum was due to the estate of Sarah P. Hughes, and that excessive payments had been made to some of the other distributees, or their creditors. How can it be said then that this decree adjudicated or settled all matters in difference between the parties, or the principles thereof, controlling the court in the decree now under review? Could appellees have appealed from that decree? We do not think so; it did not finally dispose of their rights. In *Garrett* v. *Bradford*, 28 Grat. 609, it was decided that a decree which overruled certain exceptions, and confirmed the report of a commissioner, as to the questions involved in those exceptions, but recommitted the report as to matters involved in other

exceptions, was nevertheless a decree settling the principles of the cause as to the questions involved in the exceptions over-ruled and from which an appeal would lie. But Judge SNYDER, in *Hoy* v. *Hughes,* 27 W. Va. 778, 783, referring to this decision says: "I am very doubtful whether such a decree would be considered appealable in this state." Citing *Laidley* v. *Kline,* 21 W. Va. 21. The decree in the latter case, did not differ materially from that in the Virginia case. It involved excep-tions to a commissioner's report, overruled and sustained, and did not, we think, differ very materially in this respect from the decree we are considering, except that it contained no order of recommittal. Judge SNYDER says of it: "This decree shows on its face that it does not adjudicate the principles of the entire cause nor is it otherwise such a decree as can be appealed from to this Court. The record here shows no other decree in the cause, but it does show that a number of claims other than those of the appellants were reported by the commissioner, and as those claims were in no manner considered or passed upon by the court, and the commissioner's report not having been confirmed, the appeal must be dismissed as prematurely and improvidently awarded." In *Smith* v. *Evans,* 42 W. Va. 352, the point decided was, that a decree prematurely entered, pending a commissioner's report undisposed of, and which does not finally adjudicate the controversies between the parties to the cause, is interlocutory, and not appealable. Citing *Shirey* v. *Musgrave,* 29 W. Va. 131, 11 S. E. 914; *Hill* v. *Als,* 27 W. Va. 215; *Laidley* v. *Kline, supra;* and *Camden* v. *Haymond,* 9 W. Va. 680. The decree in *Smith* v. *Evans* adjudged that the bill "in so far as it is to be regarded and taken as a creditors' bill, or as a bill for the specific perform-ance of a contract is dismissed; but, on motion of plaintiff, the bill is retained as to the feature of advancements." This Court regarded the bill neither a creditors' bill, nor one for specific performance, but one to ascertain and distribute the estate of a decedent, and held that the decree in no wise ad-judicated the merits of the cause, but left the merits wholly unadjudicated. The case of *Shirey* v. *Musgrave* is a leading case; it reviews most of the prior decisions. A balance of purchase money different from that found by a commissioner was decreed against Musgrave, and each party was decreed to

pay his own costs, the court declining to then act upon the commissioner's report, and reserving all other questions.

It was said of that decree, as it may be said of the decree now before us, that it is only necessary to understand the object of the suit, and the matter which it called upon the court to determine, to see that among the questions reserved, are some of the most important principles of the cause, and of course the decree is not appealable. The point of the syllabus applicable here is, that the statute authorizing an appeal, where there is a decree adjudicating the principles of the case, is available only where the decree appealed from adjudicates all questions raised in the cause by pleadings or otherwise. Other cases illustrating the application of the rule, and which we think justify our conclusion as to the decree of May 28, 1901, are referred to in the cases already cited.

It follows, that if that decree was not an appealable decree, the statute of limitations does not apply, and that, on principles announced in *Keck* v. *Allender*, 42 W. Va. 420, *Smith* v. *Evans*, and *Laidley* v. *Kline*, *supra*, the court below, regardless of that decree, had jurisdiction to finally adjust and adjudicate the accounts between the parties, and that all matters not finally adjudicated and disposed of by that decree are now before us for review on the present appeal.

This brings us to the consideration of the alleged errors in the decree of October 29, 1907. Was there error in the decree of May 28, 1901, which the court below could correct by that decree? Though relying on the conclusiveness of that decree, as to the status of the account of Miss Dandridge, counsel nevertheless insist there was no error in her favor therein, or prejudicial to the rights of the other distributees. On the contrary they insist that the record demonstrably shows that decree to have been clearly right. They undertake to show, by reference to particular items, errors and omissions in the reports of commissioners, and dealt with in the present and in prior decrees, which, when readjusted according to their views, will show the status of the account of Miss Dandridge practically as recited in the decree of May 28, 1901, and said "Detailed Statement" correspondingly erroneous. Reference is first made to disbursements on account of the so called Porter debt; the first, by decree of December 4, 1883, of $1,822.00; the second,

by decree of March 1, 1886, of $697.66; the third, by decree of May 20, 1887, of $1,200.00; the fourth, by decree of December 12, 1889, balance, $53.79. As we understand counsel, the argument, based on these decrees of disbursement is, that in none of them, except the last, did the court undertake to apportion the several payments on debts among the several distributees liable therefor, but directed payment out of the common fund in the hands of the special commissioners; wherefore, they say, there is nothing in the record negativing their theory, that the court may have devoted the dower interest of Mrs. Serena C. Dandridge, Sr., wife of Adam S. Dandridge, Sr., in these funds, to the payment of those debts. Our reply, in part, is, that we can not see from the records before us that this dower money was in fact so applied; or that the decree now under review is erroneous or correctible in this particular. Counsel did not bring up the entire record, either on this appeal, or on the former appeal. On the former appeal it was assumed, we think justifiably, though we are criticised by counsel for having done so, that the court below, and distinguished counsel, would not undertake to distribute funds to creditors, before a decree adjudicating the principles of the cause, and fixing determinately the rights of the parties, the failure to do which has caused all the trouble encountered on this and on the former appeal. Apropos to the argument relating to the dower money, we find by reference to the report of commissioner Moore, in the record of the former appeal, that disbursements were made on account of the Porter debt, and on other debts, prior to December 4, 1883, which may have absorbed all the dower money.

Another item, equally affected by the argument based on the appropriation of the dower money, is the item of $198.37, a portion of the debt of the First National Bank of Jefferson, charged against the estate of Miss Dandridge, disbursed under an order of June 11, 1881. But it is also argued that it appears from the record that this bank obtained a judgment against Lemuel P., A. Stephen, and Serena C. Dandridge, jointly, in the order named, and that, without other evidence of the fact, the court should assume, from the order in which defendants were named in the judgment and petition filed, that Serena C. Dandridge was the last endorser on the note sued on,

and lastly liable, and only liable, if at all, in the event the distributable shares of the two other judgment debtors should be found insufficient to discharge the debt. Neither the note nor the judgment are found in the record. It would be going too far, we think, to find error in a decree on such a record. We cannot do so.

A. complete answer, we think, to the argument relating to all disbursements made prior to or subsequent to May, 1885, is that presented by counsel for appellees, namely, that by decree of May 26, 1885, the court undertook to and did adjudicate the rights of the parties, fixing the amounts of the various debts decreed against the several distributees, and their priorities, and the proportions in which they were respectively liable, and this, so far as the record shows, was the only decree that did so. This decree we understand is the basis of the "Detailed Statement" of counsel, adopted in lieu of a commissioner's report, and of the final decree of October 29, 1907. That decree adjudged, with respect to the Porter debt and other debts with which the account of Serena C. Dandridge, Jr., should be charged as distributee, that the executors of said Porter be paid the sum of sixteen hundred and sixty-four dollars and fifty-seven cents, with interest, out of the distributive shares of A. S. Dandridge, A. S. Dandridge, Jr., E. P. Dandridge, L. P. Dandridge, Serena C. Dandridge, and Sallie P. Dandridge, and adjudged the same to be a second lien as to E. P. Dandridge and Serena C. Dandridge, a thirteenth lien as to A. S. Dandridge, and a sixteenth lien as to L. P. Dandridge, the Serena C. Dandridge, referred to, being Serena C. Dandridge, Jr. And with respect to the debt of the National Bank of Martinsburg, it was decreed that the sum of five hundred and twenty-four dollars and forty-six cents, found due to it, be paid out of the interest of Lemuel P. Dandridge, A. Stephen Dandridge, Jr., and Serena C. Dandridge. How can we go back of this decree to readjust accounts as between distributees, or creditors? We cannot do so. The rules and principles which counsel invoke to support the finality of the decree of May 28, 1901, inapplicable to it, are applicable to the decree of 1885, and preclude us from reconsidering on this appeal any errors therein.

The only other point of error relied on and covered by the

"Detailed Statement", and the decree appealed from, relates to the item of $194.19, charged against the account of Miss Dandridge, her one-third share of the judgment of the National Bank of Martinsburg. It is conceded that the decree of May 26, 1885, makes this debt a charge and lien upon the distributive share of Miss Dandridge, without distinction as to priority; but it is claimed that because the decree of distribution of March 1, 1886, provides that the sum of $582.58 be paid said bank in full of its debt, and directs that $529.22 thereof be paid out of the interest of L. P. Dandridge, and $53.36, out of the interest of A. S. Dandridge, Jr., in apparent modification of the prior decree of May 26, 1885, no part of that sum can be charged against the interest of Miss Dandridge. Why this apportionment was made by the decree of March 1, 1886, is not apparent. It is in conflict with the final decree of May 26, 1885; and a very pertinent fact about that decree is that while it fixes the amounts and priorities of the other debts decreed against the several distributive shares of the distributees, it decrees this debt of the National Bank of Martinsburg, against Lemuel P., A Stephen, Jr., and Serena C. Dandridge jointly, without priority as to liability. That decree, we think, fixed the status of the parties, and justified the court in final settlement, in charging the estate of Miss Dandridge with her one third proportion of that debt. At all events we are unable to see error justifying reversal of the decree on that ground.

This we believe disposes of all errors assigned. Great inequalities may exist in the distribution of the funds disposed of in this cause; if so, this Court is not responsible for them, the fault must be chargeable to those who had the management of the cause in the court below. It is much to be regretted that so little attention was given to necessary details, and that the record has become so involved in confusion that even and exact justice cannot be administered. To now attempt to correct supposed errors in the decree appealed from would be a hopeless undertaking. Finding no error therein we affirm the decree below.

*Affirmed.*